[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 14, 2005
THOMAS  K. KAHN
CLERK

_____

No. 03-14077

_____

D. C. Docket No. 94-00044 CR-J-24HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAMELA BARFIELD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 14, 2005)**

Before BLACK, RONEY and ALARCÓN\*, Circuit Judges.

_____

\* Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

BLACK, Circuit Judge:

In this appeal, Defendant-Appellant Pamela Barfield challenges the district court's decision to enforce her federal sentence. In January 1995, the district court agreed, upon Barfield's motion, to defer temporarily execution of her sentence for possession of cocaine base with intent to distribute. No action was taken to execute Barfield's sentence for more than eight years. After a hearing in the summer of 2003, the district court lifted the stay of execution. Barfield argues the district court erred in lifting the stay because: (1) she was entitled to credit against her sentence the eight years she spent at liberty; (2) incarceration after such a delay violates her due process rights under the Fifth Amendment; and (3) the doctrine of laches precludes the Government from enforcing her sentence. We disagree and conclude the district court did not err in enforcing Barfield's sentence.

## I. BACKGROUND

On March 1, 1994, Barfield was found in possession of 1.2 kilograms of cocaine base, commonly known as "crack." Soon after her arrest, Barfield admitted she was working as a drug courier and agreed to cooperate with law enforcement. Pursuant to a plea agreement, Barfield pled guilty to possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

On December 9, 1994, the district court conducted a sentencing hearing. Barfield faced a sentencing range of 108 to 135 months' imprisonment. In sentencing, the district court departed downward 12 levels and imposed a 30-month sentence because, among other reasons, Barfield had cooperated with the Government and had been diagnosed as HIV-positive. The district court also imposed a five-year period of supervised release.

Less than one month after sentencing, on January 6, 1995, Barfield filed a motion to defer execution of her sentence for six months. In the motion, Barfield claimed her physician informed her that she had "fully contracted the AIDS syndrome" and had approximately six months to live. The motion further stated Barfield had "two minor children who will have a brief opportunity over the next half a year to have any relationship, bonding or memories of their maternal parent." Barfield attached a laboratory report to the motion, which indicated only that Barfield was HIV-positive.

The district court granted the motion on the same day it was filed. In granting the motion, the district court noted the Government's response was not yet due. The court explained it would "preserve the status quo" and defer execution of Barfield's sentence until her motion could be "judicially considered

in light of the Government's response." The Government, however, never filed a response to Barfield's motion.

The issue of Barfield's unserved sentence resurfaced several years later. In late 2002, the Government received a letter from Barfield's former boyfriend, who alleged she was "in good health" and was perpetrating a fraud on the Government. The matter was then turned over to an investigative agency, presumably to determine the legitimacy of the claims.

On June 6, 2003, the district court, acting *sua sponte*, ordered Barfield to appear before it and show cause for why the 1995 order deferring execution of her sentence should not be set aside. At the show-cause hearing, she presented two arguments for why the Government could not, after an eight-year delay, enforce her sentence. First, Barfield argued she was entitled to credit the eight years she spent at liberty against her sentence. Second, she argued incarcerating her after such a delay violates her due process rights.

Barfield claimed she was entitled to credit against her sentence because the Government was negligent in failing to enforce the sentence for more than eight years. According to Barfield, she was not responsible for the delay because her 1995 motion only requested her sentence to be deferred for six months.

Barfield also asserted that since 1995, she regularly reported to Pretrial Services and informed it of any changes in her health. In her written response to the show-cause order, Barfield attached several letters from her doctors. One letter suggested Barfield's life expectancy had improved. This letter stated that as of September 3, 1997, Barfield had contracted AIDS and had a life expectancy of approximately five years. None of these letters, however, confirmed Barfield's claim that in January 1995—when she filed the motion to defer her sentence—she had AIDS and only 6 months to live. Furthermore, Barfield's attorney told the district court she had not seen any medical records demonstrating that in late 1994 or early 1995, Barfield had a life expectancy of six months.

In explaining its delay, the Government stated it was operating under the assumption that Barfield's death was imminent. According to the Government, it was trying to benefit Barfield by delaying enforcement of her sentence. At the district court hearing, Barfield's attorney stated she "did not doubt that the [G]overnment's inaction over the last eight-and-a-half years was nothing other than out of the goodness of [its] heart[]." Defense counsel also thanked the Government for its "benevolence and compassion in this matter."

The district court rejected both of Barfield's arguments and lifted the stay of execution on her sentence. The court ordered Barfield to self-surrender to the

Bureau of Prisons on August 11, 2003. She complied with the court's order and has remained incarcerated. This appeal followed.

## II. DISCUSSION

On appeal, Barfield raises several arguments. First, she argues the district court erred in refusing to grant credit toward her sentence for the eight years she spent at liberty.[1] Second, Barfield claims incarcerating her after an eight-year delay constitutes a due process violation under the theories of "waiver of jurisdiction" and estoppel. Finally, Barfield argues the equitable doctrine of laches precludes the Government from enforcing her sentence. We address each argument in turn.

### A. *Credit for Time at Liberty*

Barfield argues she is entitled to credit for the time she spent at liberty while the execution of her sentence was delayed. Whether she may obtain credit for the time at liberty is a question of law we review de novo. *See Whitley v. United States*, 170 F.3d 1061, 1068 (11th Cir. 1999).

---

[1] In analyzing whether a prisoner can receive credit for time at liberty, some courts refer to a specific "doctrine" or "rule," while other courts do not. *Compare United States v. Martinez*, 837 F.2d 861, 865–66 (9th Cir. 1988) (discussing "the doctrine of credit for time at liberty") *and Dunne v. Keohane*, 14 F.3d 335, 336 (7th Cir. 1994) (referring to "a common law rule") *with Leggett v. Fleming*, 380 F.3d 232, 234–36 (no specific mention of a "doctrine") *and White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930) (same).

This Court's prior precedent sets out the general rule that a delay in the commencement of a sentence does not, by itself, constitute service of that sentence. *See, e.g.*, *Scott v. United States*, 434 F.2d 11, 23 (5th Cir. 1970) ("This Court holds that the mere lapse of time that occurred here [27 months], without petitioner undergoing any actual imprisonment to which he was sentenced . . . does not constitute service of that sentence, and this sentence remains subject to be executed, notwithstanding the delay in executing it."); *United States ex rel. Mayer v. Loisel*, 25 F.2d 300, 301 (5th Cir. 1928) ("Mere lapse of time without the appellant undergoing the imprisonment to which she was sentenced did not constitute service of the sentence, which remained subject to be enforced . . . .").[2] This prior precedent compels us to conclude a convicted person, like Barfield, who has yet to serve any part of her sentence, is not entitled to credit for time spent erroneously at liberty when there is merely a delay in executing her

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

sentence.[3]  A delayed sentence, like Barfield's, is still subject to be executed. *Scott*, 434 F.2d at 23; *Mayer*, 25 F.2d at 301.[4]

In *Leggett v. Fleming*, 380 F.3d 232 (5th Cir. 2004), the Fifth Circuit reached the same conclusion as we do here.  *Leggett* similarly relied on *Scott* and *Mayer*—precedent binding our Court as well as the Fifth Circuit—in holding prisoners cannot receive credit for time at liberty when their sentences have only been delayed.  *Id.* at 234–35.[5]

Accordingly, we hold Barfield is not entitled to credit against her sentence for the time she spent erroneously at liberty.[6]

---

[3] We note we have also stated, this rule "is peculiarly appropriate in those cases where the convicted party had himself been instrumental in causing the delay in execution."  *Scott*, 434 F.2d at 23.  Barfield was instrumental in procuring the delay in this case.

[4] We recognize the Ninth Circuit has taken a different view.  In *Clark v. Floyd*, 80 F.3d 371, 373–74 (9th Cir. 1996), the Ninth Circuit granted credit for time at liberty to a habeas petitioner whose sentence was merely delayed.  The decision in *Clark* was based on the Ninth Circuit's prior holding in *Smith v. Swope*, 91 F.2d 260 (9th Cir. 1937).

[5] In *Leggett*, the Fifth Circuit considered *Clark* and similarly held it conflicted with the decisions in *Scott* and *Mayer*.  380 F.3d at 235.

[6] We do not address in this case whether a defendant who was incarcerated, released in error, and then reincarcerated, should receive credit for the time she spent erroneously at liberty. We recognize some courts will grant credit for time at liberty to prisoners who have been forced to serve their sentences in installments through a series of releases and reincarcerations.  *See, e.g.*, *United States v. Melody*, 863 F.2d 499, 504 (7th Cir. 1988) (discussing the "common law rule that a defendant ordinarily cannot be required to serve his sentence in installments—that is, a prisoner normally should serve his sentence continuously once he is imprisoned"); *United States v. Martinez*, 837 F.2d 861, 865 (9th Cir. 1988) ("Traditionally, the doctrine of credit for time at liberty has only been applied where a convicted person has served some part of his sentence and then been erroneously released.") (citations omitted); *White v. Pearlman*, 42 F.2d 788, 789 (10th

B.    *Waiver and Estoppel*

Barfield also claims her due process rights were violated under theories of waiver of jurisdiction and estoppel.  She argues the Government, through its inaction over the last eight years, has waived its jurisdiction over her.  Without such jurisdiction, Barfield contends the Government violated her due process rights when it incarcerated her in 2003.  Alternatively, she claims the Government is estopped from enforcing her sentence after the eight-year delay.  Whether or not the waiver and estoppel theories apply in this case are questions of law, which we review de novo.  *See Whitley v. United States*, 170 F.3d 1061, 1068 (11th Cir. 1999).

1.    *Waiver of Jurisdiction*

Citing the waiver of jurisdiction theory, Barfield argues her incarceration violates the Due Process Clause of the Fifth Amendment.  This Court has held a delay in the execution of a sentence can, under certain circumstances, amount to a due process violation under the waiver of jurisdiction theory.  *See Piper v. Estelle*, 485 F.2d 245 (5th Cir. 1973); *Shields v. Beto*, 370 F.2d 1003 (5th Cir. 1967); *see*

---

Cir. 1930) ("[A prisoner] cannot be required to serve [his] sentence in installments.").  Barfield's case, however, does not present such a situation.  She has not been forced to serve her sentence in installments.  Although the commencement of her sentence was delayed, she has served her sentence continuously and without interruption since it began.  Because the issue of installment service is not before this Court, we do not address it.

*also Mobley v. Dugger*, 823 F.2d 1495, 1496–97 (11th Cir. 1987) (citing the *Piper*

case).

The waiver or jurisdiction theory is premised on the constitutional

protection against arbitrary and capricious official action. *See Camper v. Norris*,

36 F.3d 782, 784 (8th Cir. 1994); *Mobley*, 823 F.2d at 1496. The theory is

commonly traced to our decision in *Shields*. In *Shields*, we held the state's

inaction for 28 years constituted a waiver of its jurisdiction over the prisoner.

*Shields*, 370 F.2d at 1005–06. We further explained the state violated the

prisoner's due process rights when it required him to serve his sentence after

waiving its jurisdiction over him. *Id.* at 1006. In *Piper*, we clarified *Shields*,

explaining when it is that official misconduct rises to the level of a due process

violation. *See Piper*, 485 F.2d at 246. We explained:

> [In order for a delay in the execution of a sentence to be repugnant to
> the Fourteenth Amendment,] it is not sufficient to prove official
> conduct that merely evidences a lack of eager pursuit or even
> arguable lack of interest. Rather the waiving state's action must be so
> affirmatively wrong or its inaction so grossly negligent that it would
> be unequivocally inconsistent with "fundamental principles of liberty
> and justice" to require a legal sentence to be served in the aftermath
> of such action or inaction.

*Mobley*, 823 F.2d at 1496–97 (alteration in original) (quoting *Piper*, 485 F.2d at 246).[7]

In this case, Barfield fails to prove the Government's action was "so affirmatively wrong" or its inaction was "so grossly negligent" that requiring her to serve her sentence would constitute a due process violation. The Government was acting under the belief, based on representations by Barfield, that her death was imminent. The Government's delay was intended to benefit Barfield by giving her an opportunity to spend time with her family. Such conduct was neither affirmatively wrong nor grossly negligent. In fact, at the show-cause hearing, Barfield's attorney went so far as to thank the Government for its "benevolence and compassion in this matter." While the Government's conduct may have evidenced "a lack of eager pursuit" or "lack of interest," we have expressly held such actions are not grounds for finding a due process violation. *Mobley*, 823 F.2d at 1496–97.

---

[7] Most courts applying the *Shields/Piper* standard have concluded its heavy burden was not satisfied on the facts of the particular case. *See, e.g.*, *Hawkins v. Freeman*, 195 F.3d 732, 744 & n.7 (4th Cir. 1999) (listing several cases where the standard was not met); *Camper*, 36 F.3d at 784–85 (no due process violation where execution of sentence was delayed for four years); *Martinez*, 837 F.2d at 864–65 (finding no due process violation when execution of prisoner's sentence was delayed for seven and one-half years); *Mobley*, 823 F.2d at 1496–97 (seven-year delay did not constitute due process violation); *Piper*, 485 F.2d at 246 (no due process violation).

Considering all the circumstances surrounding Barfield's delayed sentence, we hold her waiver argument fails because the Government's conduct did not constitute a due process violation.[8]

2.    *Estoppel*

Barfield contends the district court erred because the Government should have been estopped from seeking enforcement of her sentence. Barfield's estoppel claim relies on a series of Ninth Circuit decisions. *See, e.g.*, *United States v. Martinez*, 837 F.2d 861, 864–65 (9th Cir. 1988); *Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir. 1984); *Johnson v. Williford*, 682 F.2d 868, 871–73 (9th Cir. 1982). In these cases, the Ninth Circuit examined whether the Government can be estopped from incarcerating a convicted person whose sentence has been significantly delayed. The Ninth Circuit has treated the estoppel theory as a due process argument. *See Martinez*, 837 F.2d at 864–65 ("[F]ederal courts have

---

[8] The Government suggests we apply an even more stringent standard than the *Shields/Piper* test. The Government points to the Fourth Circuit's decision in *Hawkins*, holding the *Shields/Piper* test "fails to embody the full stringency of" the "shocks-the-conscience" standard mandated by the Supreme Court in substantive due process cases. *Hawkins*, 195 F.3d at 744. As the Supreme Court has explained, to establish a substantive due process violation in cases involving executive action, the plaintiff must prove the challenged conduct is so egregious that it "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47, 118 S. Ct. 1708, 1716–17 & n.8 (1998). However, we need not decide this issue because Barfield's due process claim fails even under the less stringent *Shields/Piper* standard.

12

examined an alleged due process violation under the theories of waiver or estoppel.").[9] The Ninth Circuit's estoppel theory requires:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.

*Martinez*, 837 F.2d at 865 (quoting *Green*, 732 F.2d at 1399).

Barfield has not pointed to, nor have we found, any decision of this Court applying estoppel to bar the Government from enforcing a sentence that has been delayed. Without deciding, even if we were to assume the Government could be estopped from enforcing a lawful sentence and even if we adopted the Ninth Circuit's standard, Barfield's claim still fails. At the very least, Barfield cannot satisfy the third element of the test. She was not ignorant of the facts surrounding the delay in the execution of her sentence. Rather, Barfield knew she had not served any part of her sentence, and knew her sentence was still outstanding. *See Green*, 732 F.2d at 1399 (holding the estoppel theory did not apply because the prisoner had "constructive knowledge that he still had time to serve"). Barfield, therefore, is not entitled to relief under the estoppel theory.

---

[9] We note some courts have suggested the governmental estoppel theory is a "non-constitutional common law" argument. *Hawkins*, 195 F.3d at 743 n.5.

C.     *Laches*

Finally, Barfield asserts in passing that the common law doctrine of laches precludes the Government from enforcing her sentence.  Barfield did not raise the laches argument before the district court.  We review arguments raised for the first time on appeal for plain error.  *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001) (citation omitted).  The four-prong test to establish plain error is: (1) there was an error in the district court's determination; (2) the error was plain or obvious; (3) the error affected substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  *Id.* (citation omitted).

To establish laches, Barfield must demonstrate (1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused her undue prejudice.  *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986).  Barfield's laches argument fails for several reasons.  Barfield has not identified any authority for the use of laches to preclude the Government from enforcing a lawfully-imposed sentence.  Moreover, Barfield has not demonstrated she suffered undue prejudice from the delay in executing her sentence.  In fact, the delay enabled Barfield to spend time with her children, as she originally

requested.[10]  As a result, the district court did not commit plain error in failing to apply the doctrine of laches to Barfield's case.

## III.  CONCLUSION

Barfield is not entitled to credit for the time she spent at liberty before the commencement of her sentence.  Moreover, enforcement of her sentence does not constitute a due process violation.  The Government has not waived its jurisdiction over Barfield.  Also, even if we assumed the estoppel theory could apply in this context, it would not apply under the facts of this case.  Finally, Barfield's laches argument fails, as well.  The district court, therefore, did not err in lifting the stay of execution and enforcing Barfield's sentence.

AFFIRMED.

---

[10] Barfield alleges she does not need to establish undue prejudice for laches to apply in her case.  We recognize that in a narrow class of civil cases, a plaintiff's delay is so outrageous, inexcusable, and unreasonable that laches may be established without a showing of prejudice. *AmBrit, Inc.*, 812 F.2d at 1545 n.74; *see also Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1517 n.15 (11th Cir. 1984); *Univ. of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040, 1044–45 (3d Cir. 1982).  However, this is not a civil case.  Moreover, even if we assumed this rule applied in the criminal context, the Government's conduct was not so outrageous and unreasonable as to fall within this narrow category of cases.  Rather, the Government's delay was caused, in part, by its reasonable assumption that Barfield's death was imminent.