[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14712
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-00277-CV-OC-10-GRJ

LAZARO DIAZ,

                                                    Petitioner-Appellant,

versus

CARLYLE HOLDER, Warden,

                                                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 8, 2005)

Before ANDERSON, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Lazaro Diaz, a pro se federal prisoner serving a 188-month sentence for conspiracy to distribute five kilograms of cocaine, appeals the district court's dismissal of his 28 U.S.C. § 2241 petition. In his petition he argued that the Bureau

of Prisons ("BOP") improperly denied him credit for time served at liberty and sanctioned him for the loss of 27 days of "good time." The district court dismissed the petition, finding that: (1) Diaz was not entitled to credit for time served at liberty because he knew or should have known that he had not served his federal sentence, and thus was partially responsible for being improperly released by Louisiana officials after the dismissal of Louisiana state charges, and (2) Diaz had not exhausted his administrative remedies as to the loss of 27 "good time" days.

"In reviewing the district court's denial of habeas corpus petition, we review questions of law de novo and the court's findings of fact for clear error." Little v. Holder, 396 F.3d 1319, 1321 (11th Cir. 2005). After on our thorough review of the record and careful consideration of the parties' briefs, we affirm.

The relevant facts are straightforward. On April 25, 1996, after Diaz pled guilty to conspiring to distribute five kilograms of cocaine, the United States District Court for the Southern District of Louisiana sentenced him to a 188-month term of imprisonment. In the instant § 2241 petition, Diaz stated that, on May 23, 1997, the BOP transferred him from a federal prison in Florida ("FCC Coleman"), where he was serving his 188-month sentence, back to Louisiana to face pending state charges. According to Diaz, at the time of his transfer, BOP authorities alleged that they gave him a form to sign advising him that if state authorities released him, he was to

2

immediately contact FCC Coleman. Diaz averred that he did not remember signing such a document and that, even if the BOP gave him the document, he did not speak, read, or write English. On June 19, 1997, after the Louisiana state charges were dismissed, the Louisiana authorities released Diaz, and he remained at liberty for 817 days, until federal authorities arrested him after a tip from an informant. In his habeas petition, Diaz sought credit for the 817 days he spent at liberty.[1]

Holder, in his official capacity as Warden of FCC Coleman, responded that when he was released to the Louisiana authorities for trial on the state charges, Diaz signed an acknowledgment form, which stated, in part:

> I am aware that State officials are to return me to Federal custody at the conclusion of my State trial. I am also aware that State officials should not release me into the community. If I am released by State authorities into the community, I am aware that my Federal sentence will not run, and that I will not receive credit on my Federal sentence for any period of time I am in the community following release by State officials.

Holder further alleged that when Diaz was released from federal custody, he was "on loan" to Louisiana authorities pursuant to a writ of habeas corpus ad prosequendum for trial and possible sentencing on the state charges. Because Diaz signed the

---

[1] Diaz also alleged that after his arrest, when he was returned to custody at FCC Coleman, he was wrongly punished for having "escaped," in that prison officials took 27 days of good time earned from him. Diaz conceded that the escape charges were eventually dropped, but maintained that he should not have been sanctioned. The district court found that Diaz did not exhaust his administrative remedies as to this claim, and thus denied it. On appeal, Diaz does not dispute the district court's finding.

3

acknowledgment form, Holder maintained that Diaz was required to call the BOP, rather than remaining in the community for over two years. Holder further stated that for the time that Diaz remained in the community, he was no longer classified as being in "official detention," and was therefore not entitled to credit for time spent at liberty. Finally, Holder alleged that Diaz provided no evidence supporting the claims that he did not remember signing the acknowledgment form and that he did not speak, read, or write English.

The district court noted that, at the time of its ruling, we had not adopted the doctrine of credit for time spent at liberty. The court further found that under the totality of the circumstances, it was clear that even if the doctrine was available, it did not apply to Diaz, who the district court determined was at least partially responsible for his erroneous liberty. This conclusion was based on the district court's finding that Diaz either knew or should have known that at the time of his release from Louisiana state custody, just over a year after imposition of his federal sentence, he had not satisfied the 15-year federal sentence, and his failure to discuss this with the authorities when he was released. The district court also found Diaz's presumption that he had "won" a federal appeal to be unreasonable, and highlighted Diaz's failure to present any evidence of a legitimate basis for such a belief. Thus, based on the

4

totality of the circumstances, the court denied Diaz's § 2241 petition for a writ of habeas corpus with prejudice. This appeal followed.

In United States v. Barfield, 396 F.3d 1144 (11th Cir. 2005), we recently noted that "prior precedent sets out the general rule that a delay in the commencement of a sentence does not, by itself, constitute service of that sentence." Id. Thus, we concluded, because the commencement of Barfield's sentence was delayed, she was not entitled to credit for time spent at liberty. Id. at 1148. We observed that the case did not present the issue of "whether a defendant who was incarcerated, released in error, and then reincarcerated, should receive credit for the time . . . spent . . . at liberty." Id. at 1148 n. 6; see also Little v. Holder, 396 F.3d 1319 (11th Cir. 2005).

Here, the district court found that under the totality of the circumstances, Diaz was at least partially responsible for his time spent at liberty, and thus was not entitled to credit, even if it was available, because Diaz knew or should have known that his release from Louisiana state custody was not a release from federal custody, nor a satisfaction of the 15-year federal sentence, for which he had served just over one year. On this record, the district court's conclusion, based on the totality of the circumstances, including its finding concerning Diaz's knowledge or imputed knowledge, supports denying relief. Not only should Diaz have known, but also as found by the district court, his failure to discuss his situation with the authorities

when he was released was unreasonable, as was his claimed belief that he had won a federal appeal -- he presented no evidence to support this contention and our review of the record has revealed none.

We can find no clear error in the district court's factual findings, nor did it incorrectly apply the established law of this Circuit. Accordingly, we affirm the denial of Diaz's § 2241 petition.

**AFFIRMED.**