**D. M. ROGERS et al., Appellants,**

v.

**FIRST NATIONAL BANK OF ST. GEORGE et al., Appellees.**

No. 13393.

United States Court of Appeals
Fourth Circuit.

Argued April 10, 1969.

Decided May 1, 1969.

Nathaniel W. Cabell and W. Turner Logan, Charleston, S. C., for appellants.

Charlton B. Horger and F. Hall Yarborough, Orangeburg, S. C., for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

HAYNSWORTH, Chief Judge:

Five minority stockholders of the First National Bank of St. George, South Carolina, sought an injunction prohibiting the merger of that bank with the First National Bank in Orangeburg. The District Court denied the injunction, and we affirm.

At a regular meeting of the directors of the St. George bank, a majority of its directors voted in favor of a merger into the Orangeburg bank and voted to present the merger agreement to the shareholders for their approval. Notice of the meeting was printed in the local newspaper as required by law.[1] The notice

---

1. 12 U.S.C.A. § 215(a):

Any national banking association * * may, with the approval of the Comptroller, be consolidated with one or more national banking associations located in the same State under the charter of a national banking association on such terms and conditions as may be lawfully agreed upon by a majority of the board of directors of each association * * * proposing to consolidate, and be ratified and confirmed by the affirmative vote

specified the time, place, and object of the shareholders meeting but did not establish an earlier record date for determination of those shareholders entitled to vote at the meeting.

At the meeting, 124½ votes more than the required two-thirds majority[2] were cast in favor of the merger. The Comptroller of the Currency approved the merger, and the District Court, after a full hearing, dissolved a temporary restraining order and denied the plaintiffs an injunction. We granted a temporary restraining order pending an accelerated appeal.

Three alleged irregularities in the marking of proxies are said to vitiate the vote and to require the enjoining of the merger.[3]

■ Joseph W. Wimberly voted 140 shares of stock in the name of "Joseph W. Wimberly as Natural Guardian for [each of his five minor children.]" Plaintiffs contend that these votes are invalid for failure of Wimberly to register as guardian for his children under the South Carolina Uniform Gift to Minors Act.[4] The record reveals, however, that the stock was registered in the name of Joseph W. Wimberly as natural guardian for each of his children. Whatever may be the propriety of a parent voting as natural guardian stock registered solely in the name of his minor child, the voting of stock in a fiduciary capacity is proper when the fiduciary relationship is revealed in the stock registration and the fiduciary is the record holder of the legal title.[5] The Uniform Gift to Minors Act was designed to meet other problems, not to restrict the voting powers of fiduciaries with respect to stock registered in the name of the fiduciary.

■ When marking one of his proxy statements, Wimberly failed to mark whether he was casting the votes for or against the merger. Wimberly was present at the stockholders meeting. His intention to vote for the merger is clearly evidenced by the facts that he voted other stock in his own name and in his name as a fiduciary for the merger, that he placed his ballot or caused it to be placed in the spot designated for affirmative proxies, and that he subsequently executed an affidavit stating that he intented to vote all of the stock for the merger. Under the circumstances, we think his action in having his proxy placed in the pile for votes in favor of the merger was the equivalent of an affirmative answer to a roll call vote.[6]

of the shareholders of each such association * * * owning at least two thirds of its capital stock outstanding * * * at a meeting to be held on the call of the directors after publishing notice of the time, place, and object of the meeting for four consecutive weeks in a newspaper of general circulation published in the place where the association * * * is located * * *.

2. Id.

3. Other irregularities are urged but the total number of votes involved would not be sufficient to reduce the vote to less than a two-thirds majority.

4. S.C.Code Ann. §§ 62–401–62–411 (1962).

5. S.C.Code Ann. § 12–16.12(c), (d):
(c) Any fiduciary may vote shares which stand of record in his name.
(d) Shares held by an executor, administrator, guardian, or committee, may be voted by him, either in person or by proxy, upon proof of his appointment, without transfer of such shares into his name. Any other fiduciary, upon proof satisfactory to the corporation of his authority to vote, may vote shares which stand of record in the name of the person for whom he is such fiduciary.
This is in accord with the general rule that the prima facie right to vote shares of stock is in the person who holds the legal title. See 5 Fletcher Cyclopedia Corporations, Ch. 13, § 2033 at 162 (1967).

6. Instead of a voice or roll call vote, each stockholder and proxy holder present, for convenience in counting the votes, was requested to cast a ballot, in the form of a proxy, in one of two piles, one for affirmative votes, the other for negative. Wimberly's were placed in the affirmative pile.

■ Complaint is made that proxies representing 610 favorable votes of persons not present at the meeting were undated. Plaintiffs contend that if South Carolina law controls, then these votes must be set aside since South Carolina law requires that every proxy be dated.[7] We need not decide whether this provision of the South Carolina Code conflicts with the provision of the National Bank Act as amended [8] which requires only that proxies be "duly authorized in writing." It is clear that the South Carolina requirement that all proxies be dated is designed to enforce the rule that no proxy shall be valid more than eleven months after the date of its execution. Here, the proxies were addressed to the specific question of merger and necessarily were executed at some time between the first notice of the meeting and the stockholders meeting, a period of approximately two months. The ill sought to be cured by the South Carolina statute is the prevention of the voting of a general proxy over a prolonged period. We decline to hold it applicable to a proxy on a specific question which could not have been executed earlier than two months before its exercise.

■ The appellants contend that the vote of the shareholders should be set aside because of a failure of the board of directors to fix a record date not less than ten days prior to the meeting for determining shareholders entitled to vote at the meeting. South Carolina law plainly provides for the fixing of such a date.[9] The application of South Carolina law to a merger of national banks would, however, conflict with the terms of 12 U.S.C.A. § 215(a) which requires only that the vote "be ratified and confirmed by the affirmative vote of the shareholders of each such * * * bank owning at least two-thirds of its capital stock outstanding * * *." The general rule is that a statute providing for the vote of shareholders is interpreted as requiring the vote of shareholders of record as of the date of the vote, absent a contrary bylaw.[10] Indeed, South Carolina had a statute similar to the federal statute [11] prior to her adoption of the Business Corporation Act in 1964.[12] Plaintiffs do not urge that under the former South Carolina statute stockholders, as of the date of voting, could not have participated in that voting; rather, they contend that South Carolina's present statute is in no way inconsistent with, but supplemental to, federal law. We find, on the contrary, an intention on the part of Congress to permit a bank desiring to merge to select any date, including the date of voting, as the record date. In-

7. S.C.Code Ann. § 12–16.14(c) (Cum.Supp. 1968):

 No proxy shall be valid after the expiration of eleven months from the date of its execution. Every proxy shall be dated as of its execution, and no proxy shall be undated or postdated.

8. 12 U.S.C.A. § 61.

9. S.C.Code Ann. § 12–16.6(a):

 For the purpose of determining shareholders entitled to notice of or to vote at any meeting of shareholders * * * the board of directors may, in accordance with the bylaws or by resolution in the absence of an applicable bylaw, fix in advance a record date for any such determination of shareholders. Such date shall not in any case be more than fifty days and, in case of a meeting of shareholders,

not less than ten full days, prior to the date on which the particular action, requiring such determination of the shareholders, is to be taken.

10. See 5 Fletcher Cyclopedia Corporations, Ch. 13, § 2033 (1967); In re Giant Portland Cement Co., 26 Del.Ch. 32, 21 A.2d 697, 701.

11. S.C.Code Ann. § 12–453 (1962) (repealed):

 At [a meeting to consider a merger agreement] the agreement shall be read and considered and a vote by ballot in person or by proxy shall be taken for the adoption or rejection of the same, each share entitled to vote entitling the holder thereof to one vote.

12. S.C.Code Ann. §§ 12–11.1 et seq.

deed, if considerations of convenience are not overridding, there is strong reason to permit the record owner of recently acquired stock to vote at the meeting in preference to its former owner.

 Finally, plaintiffs contend that the plan of merger must be set aside because the First National Bank in Orangeburg, after the agreement to merge had been approved by the stockholders of both banks, issued 500 shares of its stock in exchange for a piece of property required for bank purposes. It is conceded that the transaction improved the bank's net asset value, but the transaction is urged as a technical violation of the merger agreement.[13] In the absence of a contention that shareholders of the merged bank would be able to contest the issuance of stock for property,[14] we decline to set aside the merger. If consummation of this transaction had been delayed until the merger was consummated, no one would have a right to complain. Its earlier consummation was, at most, a technical violation of the merger agreement which could be waived by the St. George bank through its board of directors or a majority of its stockholders.

Accordingly, we affirm the denial by the District Court of the injunction forbidding merger of the First National Bank of St. George into the First National Bank in Orangeburg; we dissolve our temporary restraining order except insofar as it requires posting of bond by the plaintiffs, and we remand to the District Court for a determination of damages, if any, to the defendant occasioned by the delay in the merger as a result of this action and the temporary restraining orders.

Affirmed and remanded.

13. After the merger, the amount of stock to be outstanding was to have been 67,500 shares. Now it will be 68,000 shares.

14. No bylaw has been referred to which would forbid such a transaction. Generally, pre-emptive rights do not attach to an exchange of stock for property.

See, Annot., 52 A.L.R. 220, 234, *supplemented* 138 A.L.R. 526, 533. *See also* S.C.Code Ann. § 12–16.21(d) (2). If no shareholder of the merged bank could contest the transaction, there is no logical reason to set the transaction or the merger aside.