**Tom DOBLER and Rose Dobler, d/b/a Cedar Rose Dairy, Petitioners,**

v.

**DISTRICT COURT In and For the COUNTY OF KIT CARSON and Joseph J. Weatherby, as Judge of said Court, Respondents.**

**No. 90SA381.**

Supreme Court of Colorado, En Banc.

March 11, 1991.

John Gehlhausen, P.C., John Gehlhausen, Lamar, for petitioners.

Retherford, Mullen, Rector & Johnson, Anthony J. Johnson and Amelia L. Klemme, Colorado Springs, for Stratten Equity Coop (defendant below).

Justice ERICKSON delivered the Opinion of the Court.

This is an original proceeding by Tom Dobler and Rose Dobler (the Doblers) to obtain a writ of prohibition. We issued a rule to show cause why a writ of prohibition should not be issued, and now make that rule absolute.

I

The Doblers own and operate a dairy. Stratton Equity Coop (Stratton) sold the Doblers 14,000 pounds of rolled corn as feed for the Doblers' dairy herd. Stratton inadvertently mixed 500 pounds of urea pellet with the rolled corn.[1] The rolled corn and urea mixture caused serious injury to the Doblers' cows.[2]

---

**1.** Urea is a nonprotein substitute used as a protein supplement or replacement in the feeding of domestic animals. Some dairymen do utilize urea in the raising of dairy cows, however, the Doblers do not. In order to use urea as a feed supplement, cows must be gradually acclimated to it. The maximum amount of urea appropriately fed to cows is only 1% of their total ration, or 3% of their grain mixture. The rolled corn provided by Stratton contained 37.69% urea. When urea is consumed by a cow, it enters the rumen of the animal where nitrogen is extract-

ed from the urea by microbes in the rumen. The microbes and nitrogen combine to form microbic-protein, which is an energy source for the cow. A byproduct of this chemical process is ammonia. An excessive amount of urea will cause the natural ammonia level in the cow's blood to elevate, and may cause death.

**2.** Sixteen cows died within thirty-six hours of the consumption of the contaminated rolled corn. The cows that did not immediately die experienced symptoms of diarrhea, frothing,

The Doblers filed a claim against Stratton for damages caused by the cows' ingestion of the contaminated feed. When the case was ready for trial, the parties entered into the following stipulation:

1. The parties have agreed that, because of the nature of the evidence in this case, the matter should be heard by a Master appointed pursuant to Rule 53 of the Colorado Rules of Civil Procedure, and that the Master should hear the evidence in the case, make findings of fact, conclusions of law, and issue a Master's Report. The parties waive their rights to trial by jury.

. . . .

3. Pursuant to the above stipulations, the parties would jointly request that the Court enter an order:

. . . .

(d) directing that these proceedings, and any objections to the Master's report, be determined under the provisions of Rule 53 of the Colorado Rules of Civil Procedure. . . .

Thereafter, the district judge issued an order approving the stipulation and appointing a master pursuant to C.R.C.P. 53. At the end of a six-day hearing, the master made extensive findings of fact and conclusions of law, and submitted a recommended order. Both the Doblers and Stratton filed objections to the master's report. C.R.C.P. 53(e)(2). The district court, without conducting a hearing on the objections, set aside the master's findings and conclusions and ordered a jury trial.

The Doblers, with the consent and approval of Stratton, filed a motion to reconsider and set aside the district court's order on the ground that C.R.C.P. 53(e)(2) requires the district court to rule on the merits of the objections filed by the parties. The district court denied the motion. The district court held that C.R.C.P. 39(b) grants the court authority to order a jury trial even though a master has been appointed and has filed findings of fact and conclusions of law.[3]

## II

The issue is whether C.R.C.P. 53(e)(2) prohibits the trial court from rejecting the master's report without a hearing, and then ordering a jury trial over the objection of the parties. *See* C.R.C.P. 39(b). We hold that C.R.C.P. 53(e)(2) does prohibit such action.

C.R.C.P. 53 governs the appointment and the proceedings before a master. C.R.C.P. 39 sets forth when a trial is by jury, and when it is by the court. The district court accepted the parties' waiver of their right to a jury trial, entered an order, and appointed a master to conduct a hearing pursuant to C.R.C.P. 53, which states in relevant part:

(a) The court in which any action is pending may appoint a master therein. . . .

bloating, staggering, falling, thrashing around on the ground, and becoming comatose. An antidote of vinegar and water was forced through a hose into the stomachs of the affected cows. Fifty-one cows were later culled from the herd and sold for slaughter. Cows not directly affected by the urea refused to drink water, being fearful of approaching the water troughs due to the proximity of the dead cows. The evening milking was canceled, and the cows' feeding was delayed for seven hours and then changed from the customary rolled corn to alfalfa hay until corn again became available on the following evening. The long term effect of the urea poisoning and the stress caused by the change in the cows' environment and management was decreased milk production and reproductivity.

3. C.R.C.P. 39 states in relevant part:
(a) When trial by jury has been demanded as provided in Rule 38, the matter shall be designated upon the register of actions as a jury matter. The trial of all issues so demanded shall be by jury unless: (1) The parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury; or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of these issues does not exist; or (3) either party to the issue fails to appear at the trial.
(b) Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such demand might have been made, the court in its discretion may order a trial by a jury of any or all issues.

. . . .

(e)(1) The master shall prepare a report upon the matters submitted to him by the order of reference and, if required to make findings of fact and conclusions of law, he shall set them forth in the report. . . .

. . . .

(e)(2) In an action to be tried without a jury the court shall accept the master's finding of fact *unless clearly erroneous.* Within ten days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. . . . The court, *after hearing,* may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

(Emphasis added.)

The master's findings of fact may only be modified or rejected by a district court if they are clearly erroneous. *Gelfond v. District Court,* 180 Colo. 95, 100, 504 P.2d 673, 675 (1972); *Carlson v. Carlson,* 178 Colo. 283, 288, 497 P.2d 1006, 1009 (1972); *Brown v. Brown,* 161 Colo. 409, 412, 422 P.2d 634, 635 (1967); *see also Hutchinson v. Elder,* 140 Colo. 379, 382, 344 P.2d 1090, 1092 (1959) (trial court is bound to accept findings of master just as an appellate court is bound to accept findings of fact by the district judge). A district judge may not disturb the master's findings simply because of dissatisfaction or disagreement with the findings of the master. *Brown,* 161 Colo. at 413, 422 P.2d at 635–36. Findings of the master may only be set aside when "clearly unsupported by the evidence in the record," and when no evidence in the record would lead a reasonable person to reach the same conclusions as the master. *Sunshine v. Sunshine,* 30 Colo.App. 67, 70, 488 P.2d 1131, 1133 (1971).

In order to determine whether the findings and conclusions of the master are clearly erroneous, C.R.C.P. 53(e)(2) requires the district court to conduct a hearing.

*Brown,* 161 Colo. at 412, 422 P.2d at 635; *In re Marriage of Smith,* 641 P.2d 301, 303 (Colo.App.1981) (reversible error for the trial court to reject the master's findings without first conducting a hearing); *Sunshine,* 30 Colo.App. at 70, 488 P.2d at 1133 (the trial court may only reject the master's report and make new findings after conducting a hearing of its own).

In this case, the district court did not conduct a hearing before it rejected the master's report, but instead set the case for a trial by jury.[4] When a master is appointed, C.R.C.P. 53 must be followed. The district judge therefore erred in rejecting the master's report and setting the matter for a jury trial without first holding a hearing to determine whether the master's findings were clearly erroneous.

In response to the rule to show cause, Stratton and the district court contend that C.R.C.P. 39(b) provides a district judge with carte blanche authority to order a jury trial upon his own initiative. *See Jaynes v. Marrow,* 144 Colo. 138, 355 P.2d 529 (1960). C.R.C.P. 39 grants broad powers to a district judge to order a jury trial. Once a master is appointed, however, the district judge cannot summarily reject the master's report and order a jury trial in derogation of the requirements of C.R.C.P. 53(e)(2).

Accordingly, we make the rule absolute.

ROVIRA, C.J., does not participate.

---

**4.** Although the trial court did not explicitly reject the master's report, setting the case for a jury trial had the same effect.