**P.F.P. FAMILY HOLDINGS, L.P., Plaintiff–Appellant,**

v.

**STAN LEE MEDIA, INC., an administratively dissolved Colorado corporation, Defendant–Appellee.**

No. 09CA0899.

Colorado Court of Appeals, Div. V.

May 27, 2010.

Kamlet Reichert, LLP, R. Livingston Keithley, Stephen D. Gurr, E. Lee Reichert, III, Denver, Colorado, for Plaintiff–Appellant.

Sherman & Howard, LLC, Marcy M. Heronimus, Mark W. Williams, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge LICHTENSTEIN.

Plaintiff, P.F.P. Family Holdings, L.P. (PFP), appeals the district court's order, adopting the report of a special master, concluding no quorum was present at a court-ordered annual meeting of Stan Lee Media, Inc. (the company), an administratively dissolved Colorado corporation, and therefore that no board of directors was elected. PFP also appeals the district court's denial of its motion to reconvene the annual meeting. We reverse the district court's order and remand for proceedings consistent with this opinion.

## I.  Background

The district court appointed a special master to preside over an annual meeting of the company, held in December 2007, in a predecessor case, *Belland v. Stan Lee Media, Inc.*, Denver County Case No. 07CV7536.  By order of the court, the special master established rules and procedures to govern the 2007 meeting.  Subsequently, the district court determined that the results of the 2007 meeting were invalid.

In 2008, the district court granted PFP's motion for a second court-ordered annual meeting and appointed the same special master who had presided over the 2007 meeting. The court directed the special master to apply the same procedures and rules that had governed the 2007 meeting.

Prior to the 2008 meeting, the special master set a voluntary early proxy submission deadline, to enable her to review the validity of proxy appointments prior to the meeting. The final proxy submission deadline was one and a half hours prior to the beginning of the December 15, 2008, meeting, after which time no further proxy appointments would be accepted.  The special master received numerous proxy appointments both before and after this deadline.

At the 2008 meeting, the shareholders engaged in provisional voting for a board of directors and reinstatement of the company. The special master then moved for adjournment of the meeting in order to review the validity of proxy appointments submitted that day, to determine whether a quorum of shareholders was present.

The special master also set a limited curing period for any proxy appointments that she deemed deficient and allowed the parties[1] to brief their various arguments regarding the validity of these appointments. She set the final briefing deadline as 5 p.m. on January 7, 2009.

1. The parties before the special master were PFP and Junko Kobayashi, a shareholder of the company associated with Stan Lee. Before the trial court, and on appeal, the parties are PFP as the plaintiff-appellant and Stan Lee in his capacity as trustee for the Lee Family 1985 Trust as an intervenor.

In February 2009, the special master issued a report to the district court, determining that several of the proxy appointments were invalid and consequently there was no quorum of shareholders present at the 2008 meeting to hold a valid election.

PFP filed objections to the special master's report and requested the district court to order the special master to reconvene the 2008 meeting.

Without conducting a hearing, the district court issued a written ruling that overruled PFP's objections, denied its motion to reconvene the meeting, adopted the special master's report in its entirety, and made the report an order of the court.

PFP's appeal followed.

## II.  Standards of Review

A special master's report is not an order or judgment, but is merely a recommendation to the court, which has no effect until the court acts upon it.  *See Dobler v. District Court,* 806 P.2d 944 (Colo.1991). Under C.R.C.P. 53(e)(2) a court shall accept the factual findings of the special master unless such findings are clearly erroneous. *People ex rel. Kent v. Denious,* 118 Colo. 342, 353–54, 196 P.2d 257, 263 (1948), *overruled on other grounds by Adrian v. People,* 770 P.2d 1243, 1247 (Colo.1989).  A finding is clearly erroneous only if it is " 'clearly unsupported by the evidence in the record,' and when no evidence in the record would lead a reasonable person to reach the same conclusion as the master."  *Dobler,* 806 P.2d at 946 (quoting *Sunshine v. Sunshine,* 30 Colo.App. 67, 70, 488 P.2d 1131, 1133 (1971)).  Where a court adopts the findings of the special master, they become the findings of the court. C.R.C.P. 52.  Upon appeal, these findings are entitled to the same weight as a jury verdict and are binding on the appellate court unless clearly erroneous.  *See Kent,* 118 Colo. at 354, 196 P.2d at 263; *Julius Hyman & Co. v. Velsicol Corp.,* 123 Colo. 563, 621–22, 233 P.2d 977, 1007 (1951).  We review the district court's conclusions of law de novo.  *See Pioneer Bancorporation, Inc. v. Waters,* 765 P.2d 597, 598 (Colo.App.1988).

A corporation's bylaws constitute a contract between the corporate entity and its shareholders.  *Model Land & Irrigation Co. v. Madsen,* 87 Colo. 166, 168, 285 P. 1100, 1101 (1930).  In construing corporate bylaws, we apply the same rules used to interpret statutes, contracts, and other written instruments.  *See Gentile v. SinglePoint Fin., Inc.,* 788 A.2d 111, 113 (Del.2001); *see also* William M. Fletcher, 8 *Fletcher Cyclopedia of the Law of Corporations* § 4195 (2010).  Accordingly, we review the construction of corporate bylaws de novo.  *See Sperry v. Field,* 205 P.3d 365, 367 (Colo.2009) (statutory interpretation of trial court reviewed de novo).

## III.  Discussion

### A.  Authority of Special Master

When a shareholder meeting is court-ordered, as is the case here, the court has considerable leeway to enter "orders necessary or appropriate to accomplish the holding of the meeting." § 7–107–103(2), C.R.S.2009. A court may appoint a special master to preside over a non-jury matter pending before the court.  C.R.C.P. 53(b); *Pullen v. Walker,* 228 P.3d 158, 160 (Colo.App.2008), and thus, may appoint a special master to conduct the court-ordered shareholder meeting under section 7–107–103(1)(a) and (b), C.R.S.2009.  The authority of a special master is governed by the parameters delineated in the order of appointment.  C.R.C.P. 53(c) (the master has and shall exercise the power to regulate all proceedings and take all measures necessary or proper for the efficient performance of the master's duties under the order); *see also Belmont Mining & Milling Co. v. Costigan,* 21 Colo. 471, 474, 42 P. 647, 648 (1895); *CNA Ins. Cos. v. Berndt,* 839 P.2d 492, 493 (Colo.App.1992).

The court appointed the special master to preside over the 2008 meeting, and directed her to make "all necessary determinations about who is entitled to vote at the meeting." The court also ordered that "the documentation required for proxies, the rules for counting votes, and the rules for determining the number of votes per share and class, shall be the same as [the special master] earlier established in *Belland* [at the 2007 meeting]."

Pertinent here, article II, section 11, of the company's bylaws, states that "[t]he corporation is entitled to reject a . . . proxy appointment . . . if the secretary or other officer or agent authorized to tabulate votes, acting in good faith, has reasonable basis for doubt about the validity of the signature on it or about the signatory's authority to sign for the shareholder." This bylaw is based upon section 7–107–205(3), C.R.S.2009, which uses almost identical language. The special master established a rule derived from this statute in the 2007 meeting allowing her to reject a proxy appointment form or ballot if there was a reasonable basis for doubt as to the validity of the signature on it or about the signatory's authority to sign for the shareholder.

### B. Validity of Proxy Appointments

PFP contends that the special master incorrectly found that three categories of proxy appointment forms were invalid and that the district court erred by adopting such findings. Accordingly, PFP argues that because these proxy appointments were in fact valid, a quorum was present at the 2008 meeting and the shareholders' votes should be counted. We agree as to two categories of proxy appointments. Consequently, the shares represented by these appointments sufficiently increase the number of shares present at the 2008 meeting to create a quorum.

### 1. Stephen Gordon Proxy Appointments

■ PFP contends that the special master incorrectly rejected the proxy appointments purportedly signed by Stephen Gordon. We agree.

The special master timely received two proxy appointments signed by Gordon, one in his personal capacity as owner and one as a custodian. The special master initially determined that she had a "reasonable basis to doubt the validity of Mr. Gordon's signature on the proxy appointment form[s]," because (1) his name was not on the list of shareholders to which a notice for the 2008 Meeting had been sent, (2) his initial appointment forms were photocopies from which the special master could not determine shareholder

authority, and (3) the proxy appointment did not indicate a vote regarding the board of directors election.

The special master therefore required that Gordon submit additional documentation, "such as evidence of a current address and telephone number, so that each proxy appointment could be verified." She also required Gordon to submit the original proxy appointment forms.

Gordon timely responded to this request by submitting the original proxy appointment forms and a statement of address asserting his mailing address as the Taft Correctional Institution, where he was incarcerated. Gordon also provided the e-mail address for the individual through whom Gordon had transmitted his proxy appointments to PFP's counsel. On the date of the final briefing deadline, counsel for Junko Kobayashi filed a brief disputing, inter alia, the accuracy of Gordon's statement of address and submitted a current prisoner locator printout indicating that Gordon was incarcerated at a Long Beach CCM facility, rather than the Taft Correctional Institution. This printout was submitted on the last day of a briefing deadline set by the special master. Within hours, but after the final 5 p.m. deadline, PFP's counsel e-mailed the special master another prisoner locator page for Gordon that indicated he was incarcerated at the Taft Correctional Institution on the day that he signed his statement of address.

The special master filed a report with the district court, stating that she "reject[ed] the proxy appointment form[s] of Mr. Gordon because there were too many irregularities associated with the form[s]." She noted the factual basis for her determination that "she had a reasonable basis to doubt the validity of Mr. Gordon's signature on the proxy appointment form[s]." Specifically, she delineated five irregularities in Gordon's proxy appointments:

- Mr. Gordon was not on the list of shareholders to whom the special master sent a notice of meeting.

- Mr. Gordon initially submitted a photocopy of his proxy appointment form, and

the special master could not determine that he authorized the transmission.

- In attempting to cure his proxy, Mr. Gordon submitted an incorrect address.
- Mr. Gordon's statement of address was not notarized. (Mr. Gordon is in prison for manipulation of [the company's] stock. His proxy appointment form should therefore be treated like that of Mr. Paul, who is to be sentenced for manipulation of [the company's] stock.)
- Mr. Gordon did not mark his proxy appointment form in favor of or against the two matters being voted on.

While a district court must accept the factual findings contained in the special master's report unless clearly erroneous, *Kent*, 196 P.2d at 263, the report itself is still only a recommendation to the district court. *See Dobler*, 806 P.2d 944. Consistent with this principle is C.R.C.P. 53(e)(2), which states that after receiving the special master's report, the court "may receive further evidence" prior to adopting or rejecting the report in whole or in part. *See In re Marriage of Newell*, 192 P.3d 529, 533 (Colo.App. 2008); *Rasheed v. Mubarak*, 695 P.2d 754, 757 (Colo.App.1984). Moreover, the district court must review the record when presented with objections to the report, prior to making the determination whether to adopt or reject it. *See Gaskie v. Gaskie*, 188 Colo. 239, 244–45, 534 P.2d 629, 633 (1975).

Here, PFP filed an objection to the special master's report in the district court. It attached a notarized affidavit from Mr. Gordon swearing that (1) he signed the proxy appointments, (2) he submitted the appointments to the legal officer at the Taft Correctional Institution (whose e-mail address was on his statement of address), (3) the legal officer transmitted them to counsel for PFP, (4) at the time he signed his statement of address he was located at the Taft Correctional Institution, (5) he was never informed that this statement of address had to be notarized, and (6) between the time he signed the statement of address and the date on which Junko Kobayashi's counsel had accessed the prisoner locator database, he had been moved by the prison system to the prison in Long Beach.

Without referring to this affidavit, the district court adopted the special master's determination, stating that

[a]s a result of [Mr. Gordon not being sent notice of the 2008 meeting and his failure to submit original proxy appointments], the Special Master classified Mr. Gordon's proxy as one about which she had a "reasonable basis to question" under her 2007/2008 rules, and therefore required him to submit a non-electronically transmitted version of the proxy as well a notarized statement as to Gordon's address. She gave Gordon through January 7, 2009 at 5:00 p.m. MST to supply these requirements, the same cure period she gave everyone with initially rejected proxies. Although he supplied a non-electronic copy, he never supplied a notarized statement of his address. Worse still, the address he supplied was incorrect, and, perhaps most fundamentally, he never bothered to indicate on the proxy whether he was voting yes or no on the two matters being presented. As the Special Master noted, "no other proxy appointment form had so many defects."

Under these circumstances, the Special Master's rejection of the Gordon proxy was not only not clearly erroneous, it was, in my judgment, clearly proper. The rules she applied to his proxy were the 2007 rules I ordered her to apply, her initial conclusion that she had a reasonable basis to suspect the proxy was both fair and reasonable, she gave Gordon a chance to cure, and he failed to do so.

The first ground for adopting the special master's rejection of Gordon's appointments, that he failed to comply with the special master's request for a notarized statement of address, is not supported by the record. There is no indication that the special master ever communicated to either Gordon or PFP that the statement of address was required to be notarized, and Stan Lee Media does not point to any such communication in the record. The second ground, that Gordon's statement of address was incorrect, likewise is contradicted by the record, as established by the admittedly late prisoner locator printout and the notarized affidavit.

We note that the special master explained that she was not able to verify Gordon's signature because he did not provide any alternative contact information on his statement of address. However, Gordon did supply the e-mail address for the legal officer at the Taft Correctional Institution on his statement of address, providing an independent means for the special master to verify the validity of his signature, address, and proxy authorization.

Because the record provides no support for the first two grounds for the district court's adoption of the special master's determination, we find the court's reliance thereon to be clearly erroneous.

■ The third ground for rejecting the proxy appointment was that Gordon's appointment did not indicate a vote. However, the special master accepted other proxy appointments that failed to indicate a vote. Thus, based on this record, this factor alone did not constitute a reasonable basis for the special master to doubt the validity of the signature or authority of the signatory. Under the Colorado Business and Corporation Act, a share is represented at a meeting when the shareholder is present, either physically or by a proxy, and through such representation the share is "deemed present for quorum purposes." § 7–107–206(2), C.R.S. 2009; *see also* Cathy S. Krendl & James R. Krendl, *Colo. Bus. Corp. Act and Art. 90 Deskbook* 138 (2007). There is no requirement in either the Act or the company's bylaws that in order to be represented at a meeting, a share must also be voted. The special master recognized this when she counted other shares represented through a proxy appointment for quorum purposes, even though no vote was indicated. Accordingly, we conclude because the absence of a vote alone could not support a reasonable doubt as to the validity of the signature on the proxy appointment, the district court erred in adopting the special master's rejection of Mr. Gordon's proxy appointments.

2. The Undated Proxy Appointments

■ In its objection to the special master's report filed with the district court, and on appeal, PFP argues that the special master exceeded the parameters of the company's bylaws by requiring all proxy appointment forms to be dated. Consequently, on appeal, PFP argues that the district court erred in adopting the special master's rejection of undated proxy appointment forms. We agree.

The special master rejected the undated proxy appointment forms because "[t]he rules are very clear that the proxy appointment forms are to be dated." She cited precedent from the 2007 meeting, statutory language in section 7–107–203, C.R.S.2009, and language from the approved proxy appointment forms, to support this determination.

The district court overruled PFP's objection to the special master's rejection of the undated proxy appointment forms and adopted her findings and determinations.

Article II, section 9 of the company's bylaws states that "[a]t all meetings of shareholders, a shareholder may vote by proxy by signing an appointment form or similar writing." There is no requirement in the bylaws that a proxy appointment or similar document be dated.

Appellee contends that other language in article II, section 9, of the bylaws, and section 7–107–203(3), C.R.S.2009, supports a requirement that proxy appointment forms be dated. The pertinent language cited by appellee in both provides that an appointment form is "valid for eleven months unless a different period is expressly provided." The district court relied on this language to reject the undated forms, stating this language addresses the concern that stale proxy appointments may be used when the shareholder has not given the proxy the authority to represent him or her for a specific purpose. However, article II, section 9 of the bylaws and section 7–107–203(3) both set the effective date for a proxy appointment as the date it is "received by the corporation," and therefore the eleven-month period runs from that date.

Moreover, the agreed upon proxy appointment forms expressly stated that the appointment was for the 2008 annual meeting only. Consequently, under these facts, there

is no concern for staleness, and thus, any statutory or bylaw language addressing such a concern is not relevant. *See also Rogers v. First Nat'l Bank*, 410 F.2d 579, 582 (4th Cir.1969) (declining to apply South Carolina statutory requirement that proxy appointments be dated, because "[t]he ill sought to be cured ... is the prevention of the voting of a general proxy over a prolonged period," and the proxy appointments at issue "could not have been executed earlier than two months before [their] exercise," since they were submitted for a specific vote on a specific date).

▪ As article II, section 9 of the company's bylaws makes clear, the only requirements for a proxy appointment regarding a meeting of the company is that the appointment form or similar document be signed by the shareholder. Because a bylaw provision constitutes a contract between the shareholders and the company, *Madsen*, 87 Colo. at 168, 285 P. at 1101, and because courts construe such bylaws according to the general rules of contract interpretation, *see Gentile*, 788 A.2d at 113, a court may not abrogate or modify a bylaw provision; "[o]n the contrary, it is their duty to enforce them as they find them, and not to inject provisions by implication which the plain and unambiguous language ... does not warrant." *Empson Packing Co. v. Clawson*, 43 Colo. 188, 193, 95 P. 546, 547–48 (1908). Accordingly, although the district court was given the power to enter orders necessary for the holding of the 2008 meeting, *see* § 7–107–103(2), its orders, and the special master's rules, could not inject additional requirements for proxy appointments into the language of the company's bylaws. Thus, the district court erred in its adoption of the special master's date requirement for proxy appointment forms and its adoption of her rejection of such forms on that basis.

Given our determination that Gordon's proxy appointments and the undated proxy appointments were improperly rejected, a sufficient number of shares was represented at the 2008 meeting to establish a quorum and validly elect the board of directors.

Consequently, we need not address PFP's remaining contentions.

The order of the district court is reversed, and the case is remanded for proceedings consistent with this opinion.

Judge GRAHAM and Judge RUSSEL concur.