This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 34,112**

**CASKA ROBERTSON-LITTLE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Mary L. Marlowe Sommer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett PC
L. Helen Bennett
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1} Defendant appeals his convictions for aggravated battery against a household member, contrary to NMSA 1978, Section 30-3-16(C) (2008), false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963), and his accompanying sentence which the district court enhanced for each crime under the Habitual Offender statute, NMSA 1978, Section 31-18-17(B) (2003). Defendant argues the following: (1) his right to speedy trial was violated; (2) the district court violated Defendant's due process rights and subjected him to double jeopardy by enhancing his sentence using a prior felony that was already used as the predicate felony for enhancement in a prior case; (3) the district court erred in enhancing Defendant's sentence using a prior felony conviction that was older than ten years; (4) Defendant was denied effective assistance of trial counsel; (5) the State engaged in prosecutorial misconduct; and (6) the district court lost jurisdiction over the case when it called the wrong case number at a sentencing hearing. We disagree with Defendant and affirm his convictions and sentence.

**I.  BACKGROUND**

{2} Due to the parties' familiarity with this case and the numerous issues raised in the appeal, we provide a brief recitation of the facts herein and reserve further discussion of the facts for the analysis of each issue.

{3} Defendant's convictions for aggravated battery against a household member and false imprisonment arose out of an incident that occurred at the victim's (Victim) apartment on June 20, 2012, where, according to Victim's testimony, Defendant assaulted her by putting her in a choke hold, wrapping his hands around her neck, biting her, and choking her until she lost consciousness. Following a trial, a jury convicted Defendant of the two charges on November 20, 2013, and on August 25, 2014, the district court orally sentenced Defendant to twelve-and-one-half years of imprisonment. However, prior to entering a written judgment and sentence, the district court scheduled a second hearing in order to provide the State with the opportunity to prove Defendant's identity for the purposes of a habitual offender enhancement under Section 31-18-17. The State had previously provided the district court with a supplemental information indicating that Defendant had two prior felony convictions: (1) an April 16, 2001 conviction for aggravated burglary and aggravated assault, and (2) a November 4, 2009 conviction for possession of a firearm/destructive device by a felon. On September 29, 2014, the district court enhanced Defendant's sentence by a total of eight years, four for each count, as a result of his status as a habitual offender. Defendant's timely appeal to this Court followed.

**II.   DISCUSSION**

**A.   Defendant's Right to a Speedy Trial Was Not Violated**

3

{4} Defendant first contends that the approximately ten-month delay between the jury issuing the guilty verdicts and the district court sentencing him violated his right to a speedy trial. Specifically, he argues that the delay violated his right to a speedy sentencing. Both Defendant and the State correctly point out that we have never explicitly determined that a defendant's right to a speedy trial encompasses the right to speedy sentencing; however, when this issue has been raised, we have assumed, without deciding, that the right to speedy sentencing is encompassed within the right to a speedy trial. *See State v. Brown*, 2003-NMCA-110, ¶ 10, 134 N.M. 356, 76 P.3d 1113; *State v. Todisco*, 2000-NMCA-064, ¶¶ 16-18, 129 N.M. 310, 6 P.3d 1032. This same scenario exists in the present case.

{5} The Sixth Amendment of the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]" U.S. Const. amend. VI. The New Mexico Constitution bestows a similar right. *See* N.M. Const. art. II, § 14. In order to determine whether a defendant's right to a speedy trial has been violated, we turn to the balancing test created by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972) and adopted by our New Mexico Supreme Court in *State v. Garza*, 2009-NMSC-038, ¶ 11, 146 N.M. 499, 212 P.3d 387. In *State v. Lujan* this Court explained:

> Under the *Barker* framework, we weigh the conduct of both the prosecution and the defendant under the guidance of four factors: (1) the

4

length of the delay, (2) the reasons for the delay, (3) the timeliness and manner in which the defendant asserted his speedy trial right, and (4) the particular prejudice that the defendant actually suffered. Each of these factors is weighed either in favor of or against the [s]tate or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated.

*State v. Lujan*, 2015-NMCA-032, ¶ 8, 345 P.3d 1103 (internal quotation marks and citations omitted). On appeal, we defer to the factual findings of the district court with regard to each factor; however, we review the record and conduct a de novo review, weighing and balancing the *Barker* factors. *Lujan*, 2015-NMCA-032, ¶ 10.

**{6}** Prior to conducting the balancing test, "we first assess whether the length of the delay was presumptively prejudicial, depending on the complexity of the case." *Id.* ¶ 9 (internal quotation marks and citation omitted). "[A] 'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors." *Garza*, 2009-NMSC-038, ¶ 21. A presumptively prejudicial delay triggers the full examination and analysis of all the *Barker* factors when the delay is twelve months for simple cases, fifteen months for intermediate cases, and eighteen months for complex cases. *Id.* ¶ 48.

**{7}** Defendant argues that the ten-month delay between the jury issuing its verdict and Defendant's ultimate sentencing hearing is presumptively prejudicial. Furthermore, Defendant asserts that his case was not "inordinately complex or demanding." However, we note that Defendant relies on outdated caselaw, *Salandre*

*v. State*, 1991-NMSC-016, ¶ 22, 111 N.M. 422, 806 P.2d 562, which recognized that "a nine-month delay may be unacceptable under certain circumstances." This guideline, however, was modified by our Supreme Court in *Garza* when it stated that "one year is the appropriate guideline for determining when the length of delay for a simple case may be considered presumptively prejudicial." 2009-NMSC-038, ¶ 47. Accordingly, under the relevant and binding caselaw, the ten-month delay between the guilty verdict and Defendant's sentencing fails to meet the minimum threshold and is not presumptively prejudicial, even in a simple case as Defendant has alleged to exist here. *See id.* ("We hold, therefore, that one year is the appropriate guideline for determining when the length of delay for a simple case may be considered presumptively prejudicial."). Thus, an analysis of the *Barker* factors is not triggered as a result of Defendant's ten-month delay in sentencing, and we need not consider this issue any further. *See id.* ¶ 21 ("[A] 'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors.").

**B.    The Sentence Did Not Violate Defendant's Double Jeopardy or Due Process Rights**

**{8}**    Defendant contends that the district court violated his due process rights and his right to be free from double jeopardy when it enhanced his sentence under the Habitual Offender Statute, Section 30-18-17. Defendant asserts that the State cannot "make double use" of an initial 2001 predicate felony for the purpose of enhancing his

6

sentence in this case. We review questions of constitutional law and constitutional rights de novo. *State v. Calabaza*, 2011-NMCA-053, ¶ 9, 149 N.M. 612, 252 P.3d 836.

**{9}** In 2001, Defendant was convicted of aggravated burglary, a second degree felony. In 2009, based on his 2001 felony conviction, Defendant was convicted of possession of a firearm/destructive device by a felon, contrary to NMSA 1978, Section 30-7-16 (2001). Section 31-18-17(B) states, in relevant part, that an individual convicted of a noncapital felony within New Mexico, who "has incurred two prior felony convictions that were parts of separate transactions or occurrences . . . is a habitual offender and his basic sentence shall be increased by four years." An individual convicted under this statute is guilty of a fourth degree felony. *See* § 30-7-16(B). In a supplemental information filed prior to trial, the State contended that Defendant "ha[d] at least two (2) prior felony conviction[s] for purposes of the sentence enhancement pursuant to Section 31-18-17 . . . and his sentence [was] subject to a four[-]year enhancement." After the jury convicted Defendant of both the aggravated battery and false imprisonment charges, the district court enhanced Defendant's sentence by four years for each charge.

**{10}** Relying on *State v. Haddenham*, 1990-NMCA-048, 110 N.M. 149, 793 P.2d 279, Defendant asserts that "the use of the predicate offense for purposes of the felon

7

in possession statute [bars] the subsequent use of the predicate offense for enhancement of a later offense on double jeopardy grounds." As we explain, we have previously rejected this same argument in *State v. Yparrea*, 1992-NMCA-128, 114 N.M. 805, 845 P.2d 1259.

{11}    In *Yparrea*, the defendant had a criminal history containing a 1986 felony conviction and a 1988 conviction for felon in possession of a firearm, on which the district court used the 1986 conviction as the predicate felony. 1992-NMCA-128, ¶ 2. Then in 1991, the defendant was convicted of two additional felonies, and the state sought to enhance his conviction using the 1986 and 1988 felonies under Section 31-18-17. *Yparrea*, 1992-NMCA-128, ¶ 2. On appeal, the defendant relied on *Haddenham*, 1990-NMCA-048, and asserted that "the use of his 1986 felony conviction . . . [could not] be used again to enhance his current sentence pursuant to the habitual offender statute, and that the use of his prior conviction violate[d] state and federal prohibitions against double jeopardy." *Yparrea*, 1992-NMCA-128, ¶¶ 2, 5. This Court disagreed and explained that:

> The reasons which precluded the double use of a felony, as outlined in *Haddenham*, do not apply to the facts of the present case. Here, the facts from his prior felonies were not used to prove commission of any of [the d]efendant's current felony charges; instead, [the d]efendant's two prior felony convictions constituted the offenses used to enhance his sentences for [the crimes] in the instant case. This is not a case in which a prior felony was already taken into account in determining the punishment for the specific crime[s here]. . . . The facts and elements of [the

8

d]efendant's 1986 predicate felony of receiving stolen property and his 1988 felony conviction for felon in possession of a firearm are both separate in time and involve different facts from those underlying his felony convictions in the present case. . . . Under the circumstances shown here, the [s]tate is not precluded from utilizing both [the d]efendant's 1986 and 1988 convictions to prove that he was subject to the enhancement of his sentences under Section 31-18-17(C).

*Yparrea*, 1992-NMCA-128, ¶ 8 (internal quotation marks and citations omitted).

**{12}** Similarly, in this case, the State did not use facts from either of Defendant's prior felonies to prove that Defendant committed any crime against Victim. The 2001 felony was solely used for the purpose of enhancing Defendant's conviction under the habitual offender statute. *See id.* Defendant does not cite to, or discuss, *Yparrea* in his brief. We will not assume or guess as to what Defendant's argument under *Yparrea* may have been. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that this Court does not review unclear arguments or speculate as to what a party's argument might be). Thus, as this issue has already been resolved in *Yparrea*, we conclude that Defendant's constitutional rights were not violated. 1992-NMCA-128, ¶ 8.

**C. The District Court Did Not Err in Utilizing Defendant's 2001 Conviction to Enhance Defendant's Sentence**

**{13}** Defendant next asserts that the district court erred in utilizing a conviction that occurred more than ten years prior to enhance Defendant's sentence in the present case. Defendant relies upon the habitual offender statute, Section 31-18-17 (A), (D)

9

in support of his argument. This issue presents a question of statutory interpretation, which we review de novo. *State v. Smith*, 2009-NMCA-028, ¶ 8, 145 N.M. 757, 204 P.3d 1267.

{14} The habitual offender statute, as we detailed above, defines the term "prior felony conviction," in relevant part, as "a conviction, when less than ten years have passed prior to the instant felony conviction since the person completed serving his sentence or period of probation or parole for the prior felony, whichever is later[.]" Section 31-18-17(D)(1). In the present case, the district court found that Defendant's 2001 conviction was less than ten years old because Defendant had only recently completed a five-year period of probation for that prior 2001 felony conviction. While the State points out that "the copies of the certified pleadings of the [two] prior convictions were not introduced as exhibits and are not part of the record," we note that Defendant failed to object to the district court's factual findings as to this matter and does not object or assert otherwise on appeal. *See State v. McClaugherty*, 2007-NMCA-041, ¶ 41, 141 N.M. 468, 157 P.3d 33 (declining to review an argument where the defendant failed to raise it in the brief in chief); *State v. Rendleman*, 2003-NMCA-150, ¶ 50, 134 N.M. 744, 82 P.3d 554 (stating that issues omitted from an appellant's brief in chief are considered to be abandoned), *overruled on other grounds by State v. Myers*, 2009-NMSC-016, 146 N.M. 128, 207 P.3d 1105. As such, under the

unambiguous and plain language of Section 31-18-17(D)(1), we conclude that the district court did not err in determining that Defendant's 2001 conviction was within the ten-year period defined as a "prior felony conviction" for the purposes of the habitual offender statute. *See State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 (stating that pursuant to the "plain meaning rule statutes are to be given effect as written without room for construction unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason"). Accordingly, the district court did not err in enhancing Defendant's conviction by using his prior 2001 felony conviction.

**D.      Defendant Does Not Establish Ineffective Assistance of Counsel**

**{15}**      Defendant contends that his attorney was intoxicated during the trial and was unable to render effective assistance of counsel. We review ineffective assistance of counsel claims de novo. *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44.

**{16}**      In order to establish a case of ineffective assistance of counsel, Defendant must demonstrate that: "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v.*

11

*Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. Here, aside from asserting that his counsel at trial was intoxicated and that he "voiced his objections", Defendant fails to provide citations to the record where his objections may be found and further fails to conduct the necessary analysis demonstrating that his counsel was ineffective. Because this Court does "not review unclear arguments, or guess at what his arguments might be[,]" we decline to address this argument any further. *Headley*, 2005-NMCA-045, ¶ 15.

**E.      Defendant Has Not Established Prosecutorial Misconduct**

{17}      Defendant maintains that the State engaged in prosecutorial misconduct when it referred to more than one assault, including references made during direct examination of Victim, closing argument, and sentencing. He contends that the State's improper statements contributed to his conviction and amounted to "extreme prosecutorial misconduct affecting the integrity of the trial process, as the verdict likely rests on unsafe ground."

{18}      Defendant acknowledges that he failed to object to the State's references to multiple assaults during direct examination of Victim but maintains that he objected during closing arguments and sentencing. Defendant only provides a record citation showing where his objection was preserved during the sentencing proceedings, but he fails to provide a similar citation to his asserted objections during closing arguments.

12

We decline to search the record to determine if the objection was preserved. *Muse v. Muse*, 2009-NMCA-003, ¶ 42, 145 N.M. 451, 200 P.3d 104 ("We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings."). Because Defendant's argument was preserved by an objection during sentencing, we review this portion of Defendant's argument of prosecutorial misconduct for an abuse of discretion. *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 ("When an issue of prosecutorial misconduct is preserved by a timely objection at trial, we review the [district] court's ruling on a claim under the deferential standard of 'abuse of discretion[.]' " (citation omitted)). We review the remaining unpreserved assertions for fundamental error. *Id.* ("When the [district] court had no opportunity to rule on a claim of prosecutorial misconduct because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error.").

**{19}** Defendant contends that while the State improperly referred to "three, several or multiple assaults" committed by Defendant, Victim only testified regarding one assault. We recognize that "[i]t is improper for a prosecutor to refer to or argue on the basis of facts outside the record." *State v. Ferguson*, 1990-NMCA-117, ¶ 11, 111 N.M. 191, 803 P.2d 676. Our review of the record reveals a more expansive factual scenario that supports the State's position regarding this issue.

13

{20} Victim testified that Defendant commenced his physical assault by first "com[ing] up behind [her] and reach[ing to] put his arm around [her] neck and beg[inning] to start to choke [her]." Victim explained that Defendant was choking her with his forearm squeezing around her neck and described this action as the "first choke hold." Victim testified that as she struggled to free herself, she "bit down on [Defendant's] arm," forcing it to come loose from her neck. After being released, Victim explained that Defendant then stood face-to-face with her and "wrapped his hands around [her] neck in a way that [she] could not breathe." Victim described that she tried to escape Defendant, crawling on her forearms and knees, but Defendant grabbed her hair and pulled her back, preventing her from leaving. Victim testified that Defendant bit the back of her neck, and in what she described as the "last hold," Victim explained that she began to "black out" and lose consciousness.

{21} Defendant does not address Victim's testimony and concludes that "[i]t cannot be said that the [State's] improper statements did not contribute to the jury's conviction of [Defendant]." In sum, he wholly fails to provide any coherent argument explaining how the State's reference to this ongoing series of events during the assault was improper. Given Victim's actual testimony enumerating at least three distinct incidents that evolved during the attack, we decline to review this issue any further.

14

*See Headley*, 2005-NMCA-045, ¶ 15 (stating that this Court "will not review unclear arguments, or guess at what his arguments might be").

**F.      The District Court Did Not Call the Incorrect Case Number**

{22}     Defendant contends that the district court lost jurisdiction to sentence him when it called the wrong case number during his August 25, 2014 sentencing hearing. Defendant maintains that the district court called case number D-101-CR-2012-00530 instead of the proper case number, D-101-CR-2012-00630. However, a brief review of the record reveals that at the commencement of the sentencing hearing, the proper case number, "D-101-CR-2012-00630," was clearly and accurately called. Furthermore, if Defendant believed that an error occurred, the record reveals that Defendant failed to object at any time after the case number was called or otherwise request clarification from the district court. Accordingly, there is no factual basis to support Defendant's argument; any error was not preserved below; and we decline to review the matter further. *See State v. Lucero*, 1999-NMCA-102, ¶ 44, 127 N.M. 672, 986 P.2d 468 (declining to review an issue that was not preserved in the district court below and the defendant does not argue for an application of fundamental error on appeal); *Haddenham*, 1990-NMCA-048, ¶ 25 (declining to review an issue for which there is no factual basis in the record).

**III.   CONCLUSION**

{23}   For the foregoing reasons, we affirm Defendant's conviction.

{24}   **IT IS SO ORDERED.**


_____
**TIMOTHY L. GARCIA, Judge**


**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Chief Judge**


_____
**LINDA M. VANZI, Judge**