**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-053**

**Filing Date: April 5, 2011**

**Docket No. 30,018**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**KYLE CALABAZA,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Albright Law & Consulting
Jennifer R. Albright
Albuquerque, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**    In this unusual case, the metropolitan court ultimately enforced its sentence upon Defendant Kyle Calabaza after an approximately thirteen-month delay due to a mistake as to whether Defendant was serving his sentence during and after his appeal. Defendant now appeals the metropolitan court's denial of his motion to dismiss. He argues that the metropolitan court's delay in enforcing his sentence resulted in the court losing jurisdiction to incarcerate him, violated his right to speedy sentencing, and violated his right to due process. We hold that (1) the delay in enforcement of Defendant's sentence did not result

1

in the court losing jurisdiction, (2) the right to a speedy trial does not include delays after a defendant has been sentenced, and (3) Defendant's due process rights were not violated by the delay. As a result, we affirm the denial of Defendant's motion to dismiss.

**BACKGROUND**

**{2}**     The seven-year history of this case began with an incident of domestic violence on April 15, 2004. Defendant was convicted of battery against a household member on December 3, 2004, after a bench trial in metropolitan court and, on February 9, 2005, was sentenced to 364 days incarceration, of which he was credited with fifty-five days already served. He posted bond and was released pending appeal to the district court. After the district court affirmed his conviction on August 26, 2005, Defendant appealed to this Court. We affirmed on April 19, 2006, and issued a mandate remanding the case on June 27, 2006. On August 1, 2006, the metropolitan court, apparently not realizing that Defendant had been released on appeal bond shortly after sentencing in February 2005, inquired of the Metropolitan Detention Center (MDC) as to whether Defendant had completed his sentence. MDC did not respond until March 6, 2007, when it informed the metropolitan court that Defendant had not been in custody. The metropolitan court issued a bench warrant for Defendant on July 9, 2007, and Defendant moved to quash the warrant on July 26, 2007.

**{3}**     At a hearing on August 16, 2007, the metropolitan court quashed the warrant and asked the parties to brief the question of whether it could execute the sentence it had previously ordered. At the hearing on September 24, 2007, the metropolitan court ruled that Defendant had not incurred prejudice under the speedy trial analysis that the parties had argued, as he had been sentenced, believed the appeal was pending, and knew he could lose the appeal. Defendant's trial counsel also argued that the metropolitan court had lost jurisdiction to sentence Defendant because the delay caused by the metropolitan court's failure to enforce its sentence was greater than the time Defendant would have served had the court acted immediately upon receiving the mandate. The metropolitan court asked the parties to research the law pertaining to mandates and whether it had lost jurisdiction by failing to act and scheduled a further hearing. After briefing, the metropolitan court denied Defendant's motion to dismiss on November 20, 2007, but ruled that Defendant could serve the remainder of his sentence in the community custody program. Defendant filed a notice of appeal of the metropolitan court's ruling in district court on December 6, 2007, and filed his statement of appellate issues on March 5, 2008. The district court filed its memorandum opinion on September 29, 2009, rejecting both Defendant's jurisdictional and speedy sentencing arguments. The district court's decision is now before this Court.

**JURISDICTION**

**{4}**     We first address Defendant's argument that the metropolitan court lost jurisdiction to enforce his sentence. "Jurisdiction questions are questions of law which are subject to de novo review." *State v. Montoya*, 2008-NMSC-043, ¶ 9, 144 N.M. 458, 188 P.3d 1209.

2

**{5}**     Defendant does not cite, nor do we find, any statute, rule, or New Mexico case law definitively supporting a conclusion that the metropolitan court lost jurisdiction to enforce Defendant's sentence due to the passage of time.  Defendant cites Rule 7-703(P) NMRA, which directs that "[u]pon remand of the case by the district court to the metropolitan court, the metropolitan court shall enforce the mandate of the district court."  The rule does not specify any time frame during which the metropolitan court must take this action.  Similarly, Defendant cites NMSA 1978, Section 31-11-3 (1966), which directs that "[i]n any criminal case, if the supreme court or court of appeals affirms the judgment of the district court upon review brought by the defendant, it shall direct that the sentence pronounced be executed[.]" Again, the statute does not specify a time frame.  Defendant also asserts that the metropolitan court's failure to abide by the law and follow the mandate of the district court deprived it of jurisdiction.  However, the metropolitan court was abiding by the law and following the district court's mandate, albeit belatedly, at the time it finally enforced Defendant's sentence.

**{6}**     We therefore must address the question of whether a court loses jurisdiction in these circumstances due to the passage of time.  We are not persuaded by the cases Defendant cites from other jurisdictions.  In *Helton v. State*, 106 So. 2d 79, 79 (Fla. 1958), the sentencing court had withheld sentencing the defendant "from day to day and term to term, until further order of the court," and then attempted to sentence the defendant to imprisonment twelve years later.  *Id.* (internal quotation marks omitted).  Under Florida law, the sentence was illegal because the court was required to place the defendant on probation if the sentence was suspended, but it failed to do so.  *Id.* at 80.  The Florida Supreme Court held that because the seven-year maximum term of probation had passed, the sentencing court had lost jurisdiction to sentence the defendant.  *Id.* at 81.  In the present case, no one contends that the metropolitan court's original sentence of 364 days incarceration was an illegal sentence or that the delay in enforcement was more than a simple mistake.  Thus, *Helton*'s reasoning that the defendant should be relieved of serving his sentence, since more time had passed than the maximum possible sentence, is inapplicable.

**{7}**     In *Jeffries v. Municipal Court of City of Tulsa*, 536 P.2d 1313, 1315 (Okla. Crim. App. 1975), *superseded by statute as recognized by Houghton v. City of Wewoka*, 753 P.2d 933, 935 (Okla. Crim. App. 1988), a municipal court deferred the defendant's sentence for one year without statutory or other authority to do so with the defendant subject to conditions.  Sometime later, the defendant was ordered to pay a fine and serve ten days incarceration.  *Id.*  The court of criminal appeals held that because the municipal court had deferred sentencing without authority for more than the ninety-day maximum sentence the defendant could have received, it had lost jurisdiction over him after ninety days.  *Id.* at 1317.  In the present case, there is no assertion that the metropolitan court's initial sentence was imposed without authority or that there were any restrictions on Defendant.  The reasoning of *Jeffries* does not apply.

**{8}**     Although there is no New Mexico law establishing that a court loses jurisdiction to enforce a sentence after any specific period of time, as we will discuss below, there is an outer limit of time, not reached in the present case, after which enforcement of a sentence

3

would not comport with due process. Courts in other jurisdictions considering whether delayed enforcement of a sentence violates due process have referred to a waiver of jurisdiction theory. *See, e.g.*, *United States v. Barfield,* 396 F.3d 1144, 1148 (11th Cir. 2005) (recognizing that "a delay in the execution of a sentence can, under certain circumstances, amount to a due process violation under the waiver of jurisdiction theory"); *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973) (per curiam) (holding that for a waiver of jurisdiction, the state's action "must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath of such action or inaction" (internal quotation marks omitted)).

**SPEEDY ENFORCEMENT OF SENTENCE**

{9}     Before discussing the due process issues, we consider Defendant's argument that the delay in enforcing his sentence violated his constitutional right to a speedy trial. When reviewing an alleged speedy trial violation, "we are deferential to the trial court's fact finding but independently examine the record to determine whether [the d]efendant's constitutional right to a speedy trial was violated." *State v. Tortolito*, 1997-NMCA-128, ¶ 6, 124 N.M. 368, 950 P.2d 811. "We review questions of constitutional law and constitutional rights, such as due process protections, de novo." *State v. Montoya*, 2010-NMCA-067, ¶ 11, 148 N.M. 495, 238 P.3d 369, *cert. denied*, 2010-NMCERT-006, 148 N.M. 583, 241 P.3d 181.

{10}     Although New Mexico courts have addressed a defendant's right to be speedily sentenced following a plea or finding of guilt, our courts have not addressed the issue of delays between pronouncement of a sentence and enforcement of that sentence. For convenience, we refer to the former as "speedy sentencing" and the latter as "speedy enforcement." Defendant argues that the speedy sentencing analysis applies in the circumstances of his case. In *State v. Todisco*, 2000-NMCA-064, ¶ 16, 129 N.M. 310, 6 P.3d 1032, a speedy sentencing case, the defendant argued that a nine-month delay in concluding a hearing on his amenability to treatment and rehabilitation as a child violated his right to speedy sentencing. In *Todisco,* this Court assumed without deciding that the defendant's right to speedy sentencing is part of a defendant's speedy trial right. *Id.* ¶ 18. This Court applied the four-factor speedy trial balancing test from *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *Todisco*, 2000-NMCA-064, ¶ 19. "The *Barker* test requires us to balance (1) the length of delay, (2) the reasons for the delay, (3) the assertion of the right, and (4) prejudice to the defendant." *Todisco*, 2000-NMCA-064, ¶ 19. *Todisco* pointed out, however, basic differences between the speedy trial and the speedy sentencing contexts.

> Traditionally, the right to a speedy trial protects against three types of prejudice: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility of impairment to the defense. However, . . . in a post-conviction situation, a delay in sentencing involves considerations different from those related to pre-trial delay. The alteration

4

of [the] defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process. Most of the interests designed to be protected by the speedy trial guarantee diminish or disappear altogether once there has been a conviction, and the rights of society proportionately increase. Therefore, the prejudice claimed by the defendant must be substantial and demonstrable.

*Id.* ¶ 23 (alteration omitted) (internal quotation marks and citations omitted).

**{11}**  Although the *Barker* factors may be valid considerations when the issue is speedy sentencing, we do not believe the guidelines that New Mexico cases have delineated in the speedy trial context are specifically applicable in the speedy enforcement context. *See, e.g., United States. v. Sanders*, 452 F.3d 572, 577-79 (6th Cir. 2006) (identifying various contexts in which the *Barker* framework has been applied and holding that it does not apply to a delay after a conviction and sentence has been imposed). In *Sanders*, 452 F.3d at 577-78, the court noted that the Sixth Amendment right to a speedy trial was not implicated by a delay after the imposition of a sentence followed by several appeals and remands for resentencing. The court also noted that the purposes behind the speedy trial right were not necessarily to protect the defendant from the passage of time, but instead were intended to protect a defendant from impaired memories of witnesses, lost evidence, deprivation of witnesses, and other impairments on the ability to maintain his defense that can occur as a result of the passage of time. *Id.* These concerns are not implicated in the speedy enforcement context because the defendant has already had a trial and has been sentenced.

**DUE PROCESS**

**{12}**  However, as we have mentioned, a delay in enforcement of a sentence may result in a violation of a defendant's due process rights. *See Barfield*, 396 F.3d at 1148; *see also Sanders*, 452 F.3d at 579 ("The Sixth Amendment right to a speedy trial is . . . not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause." (alteration in original) (internal quotation marks and citation omitted)). Other jurisdictions have applied a totality of the circumstances test in determining whether a delay has infringed on a defendant's due process rights. In these cases, the courts have considered a variety of factors pertinent in each case in determining whether there was a due process violation. The key consideration is whether the circumstances dictate that enforcing a defendant's sentence would be "inconsistent with fundamental principles of liberty and justice." *United States v. Martinez*, 837 F.2d 861, 864 (9th Cir. 1988) (internal quotation marks and citation omitted). We adopt this totality of the circumstances approach and apply it to Defendant's case.

**{13}**  The facts of *Martinez* resemble those before us. In *Martinez,* the Ninth Circuit affirmed the defendant's conviction in 1976, but he was never ordered to begin serving his four-year sentence. *Id.* at 862. The error was discovered in 1982, and the defendant again

5

appealed to the Ninth Circuit, which first observed that "under common law a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed." *Id.* at 864. The court further stated that "[m]ore recent cases, however, examine the totality of the circumstances surrounding the delay in execution of sentence" to determine if due process has been violated. *Id.* Under the totality of circumstances approach,

> [a] convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several additional factors must be present before relief will be granted—the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by [the] defendant's release and his incarceration must be unequivocally inconsistent with fundamental principles of liberty and justice.

*Id.* (internal quotation marks and citation omitted). After analyzing the totality of circumstances, the *Martinez* court concluded that due process would not be violated by requiring the defendant to serve the sentence, even after a delay the court calculated as seven-and-a-half years. *Id.* at 863, 865.

**{14}** In *Mobley v. Dugger*, 823 F.2d 1495, 1496 (11th Cir. 1987), the defendant was released on bond pending appeal. His attorney filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967) (holding that an attorney who believes appeal would be frivolous must inform the court and file a brief identifying arguably appealable matters in the record). Hearing nothing further from the defendant, the appellate court affirmed his convictions, but it did not take appropriate action to have the defendant taken into custody. *Mobley*, 823 F.2d at 1496. The defendant, who lived openly under his own name, called the clerk several times to determine the status of his appeal. *Id.* About seven years after his conviction, he was finally arrested. *Id.* On appeal of a denial of habeas corpus, the defendant argued that "the due process clause of the Fourteenth Amendment accords a prisoner the right to re-establish himself and live down his past, and that the state violates this right when it delays the incarceration of a prisoner for an inordinate amount of time." *Id.* (internal quotation marks and citation omitted). Rejecting this argument, the Eleventh Circuit held:

> In order for a delay in the execution of a sentence to be repugnant to the Fourteenth Amendment, it is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath of such action or inaction.

*Id.* at 1496-97 (alteration omitted) (internal quotation marks and citation omitted).

6

**{15}** In *Barfield*, 396 F.3d at 1146, the defendant was sentenced to thirty months incarceration for a drug offense. Shortly after sentencing, the defendant, who was HIV positive, told the court that she had developed AIDS and had only six months to live. *Id.* Upon the defendant's motion to defer enforcement of the sentence, the court did so to "'preserve the status quo'" while awaiting the state's response to the defendant's motion. *Id.* The state never filed a response, and the defendant was never incarcerated pursuant to the original sentence. *Id.* About eight years later, the court learned that the defendant was alive and in relatively good health and ordered the defendant to appear and show cause as to why the order deferring her sentence should not be set aside. *Id.* The defendant argued that the state could not then enforce the sentence because the defendant was entitled to credit against the thirty-month sentence for the time she had been free and that under the Due Process Clause of the Fifth Amendment, the state had waived jurisdiction to enforce the sentence, a theory "premised on the constitutional protection against arbitrary and capricious official action." *Id.* at 1146, 1149. Relying on the "affirmatively wrong" standard set forth in *Mobley*, the court rejected the defendant's argument. *Barfield*, 396 F.3d at 1149. The court noted that the original reason for delaying enforcement was based on her own representations that she was gravely ill and was intended to give her an opportunity to spend time with her family. *Id.*

**{16}** In contrast, in *Shields v. Beto*, 370 F.2d 1003, 1003 (5th Cir. 1967), the defendant served about a year of a forty-year sentence in Texas beginning in 1933. He had previously escaped from prison in Louisiana. *Id.* at 1004. In 1934, the defendant waived extradition to Louisiana, returned there, and resumed serving his Louisiana sentence from which he was released on parole in 1944. *Id.* Texas had not placed a detainer on the defendant, and he remained free until 1960. *Id.* Pursuant to new charges in Tennessee, he was incarcerated there until 1962, at which time, he was returned to Texas. *Id.* Pursuant to new charges in Texas, the defendant was sentenced to two years, plus the thirty-nine years he had not served on the twenty-eight-year-old 1933 convictions. *Id.* Petitioning for habeas corpus, the defendant argued that after twenty-eight years of inaction by Texas, it violated due process to require him to serve the thirty-nine-years remainder of his 1933 sentence. *Id.* The Fifth Circuit held:

> [T]he extraditing of [the defendant] to Louisiana authorities and the release by Texas of the prisoner before expiration of his sentence constituted a waiver of jurisdiction over [the defendant], especially where the surrendering sovereign (Texas) showed no interest in the return of the prisoner, either by agreement between the sovereigns, by detainer, or any other affirmative action taken by it following his release in Louisiana.

*Id.* at 1005-06.

**{17}** In *People v. Levandoski*, 603 N.W.2d 831, 833 (Mich. Ct. App. 1999), the defendant was convicted in 1991 of driving with an unlawful blood alcohol level and sentenced to ninety days incarceration. He was told that he could not begin serving his sentence until

further notice because of jail overcrowding. *Id.* In 1992, during a period of unemployment, the defendant asked to serve his sentence, but was told it was not possible at that time. *Id.* Finally, in 1996, the defendant received a letter telling him to report to the jail. *Id.* By 1996, the defendant was married, had joined the National Guard, and would probably lose his job if he had to serve the ninety-day sentence. *Id.* at 834. On appeal, the court rejected the defendant's claim that the trial court had lost jurisdiction over him, but held that, in the totality of the circumstances, his due process rights had been violated. *Id.* at 837. The court cited three factors: (1) the delay did not result from mere negligence, but was a result of deliberate action by officials that resulted in a lack of jail space; (2) the defendant had asked to begin serving his sentence in 1992; and (3) the defendant had become a productive member of society. *Id.* at 837-39.

**{18}** Certain common considerations run through these cases. Among these are the length of the delay and the nature of the defendant's circumstances at the time the state attempts to enforce the sentence, as well as whether the delay arose from a negligent mistake on the part of the court or from deliberate or grossly negligent action, whether the defendant bears any responsibility for the delay, and whether the defendant has attempted to remedy the delay without success. No single objective factor predominates. In *Levandoski*, for example, the court declined to enforce a sentence after a five-year delay, while in *Martinez*, *Mobley*, and *Barfield*, the courts required the defendants to serve their sentences after seven- to eight-year delays. In both *Levandoski* and *Mobley*, the defendants at least initially attempted to check the status of their cases, but the defendant in *Levandoski* was not required to serve his sentence while the defendant in *Mobley* was.

**{19}** Applying the totality of the circumstances due process analysis, we first conclude that the relevant period of delay was the approximately thirteen months between this Court's mandate on June 27, 2006, following Defendant's first appeal, and the metropolitan court's issuance of the bench warrant in July 2007. This delay is only a fraction of the seven- to eight-year delays in *Martinez*, *Mobley*, and *Barfield*, in which the sentences were enforced. During this thirteen-month period, Defendant had already been sentenced and should have known that he could lose his appeals to the district court and to this Court and would then have to serve the remaining 309 days of his sentence. It is not clear from the record when Defendant learned that his appeals had been decided against him. There is no indication that Defendant had any reason to affirmatively, but incorrectly, believe that he was free of further restraint on his liberty. Thus, for the period of delay at issue, Defendant may have (1) believed his appeals were still pending, and it was possible he would be obligated to serve the remainder of his sentence; or (2) known he had lost his appeals and was obligated to serve the remainder of his sentence. In either case, it would be unreasonable for him to believe he was conclusively free of additional incarceration.

**{20}** While the precise cause of the delay following our mandate is unclear from the record, there is no assertion that it was caused by anything other than an oversight in the metropolitan court's record-keeping system. There is no suggestion of deliberate action by

8

the metropolitan court, such as delaying enforcement because of jail overcrowding, or actively misinforming Defendant of the status of his case.

{21}     In the context of the right to a speedy trial, our Supreme Court has noted that "[a] defendant does not have a duty to bring himself to trial, and a speedy trial violation may be found even when the defendant has not asserted the right." *Zurla v. State*, 109 N.M. 640, 644, 789 P.2d 588, 592 (1990), *modified on other grounds by State v. Garza*, 2009-NMSC-038, 146 N.M. 499, 212 P.3d 387.  We believe a similar concept applies in the speedy enforcement context.  A defendant does not have a duty to extract an order from the court as to when he must begin serving his sentence.  *See Martinez*, 837 F.2d at 866 (holding that "just as a defendant has no duty to bring himself to trial, he has no affirmative duty to aid in the execution of his sentence" (citation omitted)).  Nonetheless, we observe that Defendant, unlike the defendants in *Mobley* and *Levandoski*, apparently made no attempt to learn the status of his appeal as time progressed.

{22}     Finally, in ruling that Defendant must serve the remaining 309 days of his sentence, the metropolitan court recognized that he appeared to have turned his life around and authorized him to serve the time in the community custody program, which will reduce the prejudice he might incur after the delay in enforcing his sentence.

**CONCLUSION**

{23}     A court does not lose jurisdiction because of a delay in enforcement of a sentence unless enforcing the sentence would infringe on a defendant's due process rights.  In analyzing whether a delay infringes on a defendant's due process rights, we apply a totality of the circumstances test and determine whether the enforcement of the sentence would be inconsistent with fundamental principles of liberty and justice.  Because the delay by the metropolitan court did not infringe on Defendant's due process rights, we affirm.

{24}     **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____
**CELIA FOY CASTILLO, Chief Judge**


_____
**LINDA M. VANZI, Judge**

9

**Topic Index for *State v. Calabaza*, Docket No. 30,018**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| CT-ST | Speedy Trial |
| | |
| **CU** | **COURTS** |
| CU-ME | Metropolitan Court |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-SP | Speedy Trial |
| CA-TL | Time Limitations |
| | |
| **JD** | **JURISDICTION** |
| JD-ME | Metropolitan Court |