Certiorari Denied, October 20, 2017, No. S-1-SC-36626

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2018-NMCA-002**

**Filing Date: July 28, 2017**

**Docket No. A-1-CA-34615**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**FABIAN LOPEZ,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Stephen K. Quinn, District Judge**

Hector H. Balderas, Attorney General
Laura E. Horton, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**GARCIA, Judge.**

**{1}** Defendant, Fabian Lopez, was convicted of aggravated battery with a deadly weapon, following a workplace altercation. Defendant raises multiple issues on appeal, including whether the over two hundred day delay between conviction and sentencing violated due process. As an issue of first impression, we conclude that Defendant failed to show prejudice and that no due process violation occurred. On Defendant's remaining arguments raised on

1

appeal, we hold that there is no reversible error. As such, we affirm Defendant's conviction.

## BACKGROUND

**{2}** In February 2011, Saul Montano (Victim or Mr. Montano) and Defendant both worked at the Midway Dairy in Portales, New Mexico. Defendant speaks very little Spanish and Mr. Montano speaks very little English. On February 13, 2011, the two men engaged in an altercation which seemingly resulted from their limited proficiency in the language spoken by the other party. While the two men were working, they began verbally arguing and at first, Jesus Acosta, a witness to the altercation, believed the two men were just kidding around. Mr. Acosta testified that a third person was mistranslating what Defendant and Mr. Montano were saying to each other. Defendant testified that he believed that Mr. Montano was gay and was trying to come on to him, saying "open [your] butt hole." Mr. Montano testified that he said to Defendant "make way asshole" while trying to get by him in the dairy. Defendant became furious and he yelled at Mr. Montano that he was not gay. The two men went outside and both men testified that the other threw the first punch. They scuffled for a few minutes and Defendant ended up on the ground. Defendant testified that he had his shirt over his head, which caused him to panic. Mr. Montano admitted that he was going to continue to punch Defendant, but Defendant pulled a knife out of his boot. Defendant then stabbed Mr. Montano one time in his upper leg near his buttocks.

**{3}** State Police Agent Noe Alvarado was dispatched to the home of Mr. Montano, where he was receiving medical attention from paramedics. Agent Alvarado then went to the dairy to speak with Defendant, where Defendant's wife gave Agent Alvarado the knife used in the altercation. Defendant admitted to Agent Alvarado that he had an argument with and then stabbed Mr. Montano.

## PROCEDURAL HISTORY

**{4}** Defendant was arrested and then released on bond on February 16, 2011, and remained out on bond during the entirety of the proceedings. A preliminary hearing was held in Roosevelt County Magistrate Court on April 13, 2011. On April 14, 2011, the State filed a criminal information charging Defendant with aggravated battery with a deadly weapon, pursuant to NMSA 1978, Section 30-3-5(A), (C) (1969), and attached a list of witnesses for trial, including Agent Alvarado and Mr. Montano. On June 24, 2011, the State filed a second witness list adding Mr. Acosta with his address as the Midway Dairy in Portales.

**{5}** A hearing was held on August 19, 2011, regarding Defendant's motion for discovery. The State notified the district court that discovery had been available on the database since April 28, 2011. Defendant filed a motion to suppress Mr. Montano's testimony on September 9, 2011, claiming the State failed to produce the "alleged victim" for an interview. The district court held a hearing on Defendant's motion on December 9, 2011. The State argued that it had set up two courtesy interviews with Mr. Montano but that he did not show up to either. The district court instructed Defendant to subpoena Mr. Montano and if then he did

2

not appear, it would consider suppressing his testimony. Defendant issued a subpoena for an interview with Mr. Montano at his New Mexico address on December 16, 2011. However, service was not completed because Mr. Montano had moved to Buckeye, Arizona, a fact noted in the State's supplemental witness list filed on December 13, 2011.

**{6}** Trial was scheduled for September 18, 2012, but Defendant filed a motion to continue that setting, agreeing to waive time until the next setting. Defendant's motion was granted. Defendant renewed the motion to suppress Mr. Montano's testimony on September 18, 2012. Trial was rescheduled for October 17, 2012. At the docket call on October 9, 2012, Defendant realized that the December 2011 subpoena was served to Mr. Montano's prior address. The State and Defendant filed a joint motion to continue the October 2012 trial setting in an attempt to get Mr. Montano to New Mexico for an interview, agreeing that the delay in time would count against the State.

**{7}** On May 13, 2013, Defendant did not appear for the scheduled docket call and a bench warrant was issued. The bench warrant was later quashed, and Defendant notified the district court that his son had been in the hospital. At the hearing, defense counsel indicated that she had interviewed Mr. Montano by phone. On October 17, 2013, Defendant filed a motion to continue the next scheduled pretrial conference, agreeing to waive the time limits until the next setting. The trial was again rescheduled for March 26, 2014.

**{8}** Following a jury trial, Defendant was convicted of aggravated battery with a deadly weapon on March 26, 2014. The district court ordered a pre-sentence report from adult probation on October 20, 2014. A supplemental criminal information was filed by the State, and the district court sentenced Defendant as a habitual offender, pursuant to NMSA 1978, Section 31-18-17 (2003) with one year to serve and three years suspended. This appeal followed.

## ANALYSIS

**{9}** Defendant makes the following arguments: (1) the delay in holding Defendant's sentencing hearing violated Defendant's right of due process; (2) defense counsel provided ineffective assistance of counsel by failing to assert Defendant's right to a speedy trial; (3) the district court erred in allowing the witness, Mr. Acosta, to testify because the State failed to disclose his address; and (4) the district court made several errors that denied Defendant a fair trial, including holding the trial at the Yam Theater and admitting certain testimony by Agent Alvarado as well as the photographs of the knife used in the altercation. Finally, Defendant argues that the cumulative impact of the errors at trial was so prejudicial that he was denied a fair trial and reversal is required.

## I.      Due Process in Delayed Sentencing

**{10}** The New Mexico appellate courts have on several occasions analyzed cases where defendants have faced delays in the imposition of a sentence or in the enforcement of a

3

sentence. *See e.g., State v. Calabaza*, 2011-NMCA-053, ¶¶ 19-22, 149 N.M. 612, 252 P.3d 836 (analyzing whether the thirteen-month delay between this Court's mandate to the district court and the eventual sentencing violated the defendant's right to a speedy trial and due process); *State v. Brown*, 2003-NMCA-110, ¶ 9, 134 N.M. 356, 76 P.3d 1113 (involving a case where the defendant argued that "his right to a speedy trial was violated by a delay of twenty months from the time this Court reversed one of his trafficking convictions and remanded the case for re-sentencing until [the d]efendant was actually re-sentenced"). In *State v. Todisco*, the defendant argued that such a delay violated his right to a speedy trial under the Sixth Amendment of the United States Constitution and this Court, relying on past guidance from the United States Supreme Court, assumed that the Sixth Amendment right to a speedy trial extended to the sentencing phase of a criminal proceeding. 2000-NMCA-064, ¶ 16, 129 N.M. 310, 6 P.3d 1032 (citing to *Pollard v. United States*, 352 U.S. 354, 361 (1957)). This Court then "[assumed] without deciding, that the [Sixth Amendment] speedy trial right [can be applied to delays in] sentencing proceedings" and applied the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) to analyze the defendant's claim of an excessive delay in the trial court's imposition of a sentence. *Todisco*, 2000-NMCA-064, ¶¶ 16, 19.

**{11}**    In *Calabaza*, this Court reasoned that, although the *Barker* factors may be valid considerations when the issue addressed is speedy sentencing, we did "not believe the guidelines [were] . . . specifically applicable in the speedy enforcement context." *Calabaza*, 2011-NMCA-053, ¶ 11. The defendant in *Calabaza*, in addition to speedy trial claims, also argued a violation of due process in the delay that occurred in the imposition of his sentence. *Id.* ¶ 12. This Court, in looking to similar cases where there was a delay not in the sentence hearing itself but in the imposition of a defendant's sentence, looked to the "totality of the circumstances." *Id.* ¶ 19. These circumstances include the following:

> the length of the delay and the nature of the defendant's circumstances at the time the state attempts to enforce the sentence, as well as whether the delay arose from a negligent mistake on the part of the [district] court or from deliberate or grossly negligent action, whether the defendant bears any responsibility for the delay, and whether the defendant has attempted to remedy the delay without success.

*Id.* ¶ 18. In *Calabaza*, we determined that any prejudice to the defendant in the delay of the imposition of his sentence was outweighed by other factors, including the district court's determination that the defendant be allowed to serve the time imposed in a community custody program. *Id.* ¶ 22.

**{12}**    In *Betterman v. Montana*, the United States Supreme Court recently held that a defendant's right to a speedy trial under the Sixth Amendment does not extend beyond the

4

time of conviction. 578 U.S. ___, 136 S. Ct 1612, 1617 (2016).[1] However, the United States Supreme Court did recognize that, similar to the pre-arrest stage of a criminal proceeding, due process serves as a protection against exorbitant delays, including "tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* at 1612. After conviction, "a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentence proceeding that is fundamentally fair." *Id.* at 1617. Because the defendant in *Betterman* did not raise a due process challenge on appeal, the Court expressed no opinion on how the defendant may have fared under the more "pliable [due process] standard." *Id.* at 1618. The United States Supreme Court offered limited dicta considerations that might be applied in analyzing a defendant's claims of due process violations related to delays in sentencing. It proposed considering factors somewhat similar to the *Barker* factors applied in a speedy trial analysis. *Betterman*, 136 S. Ct at 1618 n.12. These similar factors included: "[the] length of and reasons for the delay, the defendant's diligence in requesting expeditious sentencing, and prejudice." *Id*. In a concurring opinion, Justice Sotomayor also noted that "the *Barker* factors capture many of the concerns posed in the sentencing delay context[,] and . . . because the *Barker* test is flexible, it will allow courts to take account of any difference between trial and sentencing delays." *Betterman*, 136 S. Ct. at 1619 (Sotomayor, J., concurring). However, as recognized in Justice Thomas's concurrence, the *Barker* factors "may not necessarily translate to the delayed sentencing context." *Betterman*, 136 S. Ct. at 1618 (Thomas, J., concurring). Instead, "[t]he Due Process Clause can be satisfied where a [s]tate has adequate procedure to redress an improper deprivation of liberty or property." *Id.*

{13}     Following *Betterman*, at least one federal district court has chosen to use the *Barker* factors in analyzing claims of delayed sentencing under a due process analysis. *See Deck v. Steele*, 4:12 CV 1527 CDP, 2017 WL 1355437, *58, __ F. Supp. 3d __ (E.D. Mo. Apr. 13, 2017). Other jurisdictions, including Montana and the Federal Sixth Circuit Court of Appeals, have rejected the *Barker* factors and instead have looked to the due process analysis set out in *United States v. Lovasco*, 431 U.S. 783 (1977), to address " '[a]ny undue delay' before or after the period protected by the Sixth Amendment," which would include delays in sentencing as well as delays in the imposition of a sentence. *See United States v. Sanders*, 452 F.3d 572, 574, 577-580 (6th Cir. 2006) (quoting *United States v. McDonald*, 456 U.S. 1, 7 (1982)); *State v. Betterman*, 2015 MT 39, ¶ 29, 378 Mont. 182, 342 P.3d 971, *aff'd*, 136 S. Ct. 1609. Under this alternative analysis, the question of whether a delay in sentencing violates a defendant's due process rights would be answered by looking to: "(1)

---

[1]The United States Supreme Court reserved "the question [of] whether the Speedy Trial Clause applies to bifurcated proceedings in which, at the sentencing stage, facts that could increase the prescribed sentencing range are determined[,]" for example capital cases. *Betterman*, 136 S. Ct. at 1613 n.2. The Court also reserved the question related to renewed prosecution following successful appeal, when the defendant again had a presumption of innocence. *Id.* Neither question is raised here nor does Defendant make any arguments of this nature.

the reasons for the delay; and (2) what prejudice the defendant has suffered as a result of the delay." *Sanders*, 452 F.3d at 580. We agree with the Sixth Circuit Court of Appeals that the "*Lovasco* [due process] framework is well-suited to analyze whether such a delay has occurred." *Sanders*, 452 F.3d at 580. Under this framework, appellate courts are to determine only "whether the action complained of violates those fundamental conceptions of justice which lie at the base of civil and political institutions, and which define the community's sense of fair play and decency." *Id.* (omission and internal quotation marks omitted) (quoting *Lovasco*, 431 U.S. at 790).

**{14}** Defendant argues that the two-hundred-and-nine-day delay between conviction and sentencing violated his right to due process. Although we believe *Lovasco*'s due process framework is the most suitable analysis for a delay in sentencing claim, under any framework—*Barker*, *Lovasco*, or a totality of the circumstances test—the burden uniformly remains on the defendant to prove that the delay in sentencing was prejudicial. *See Lovasco*, 431 U.S. at 790 (stating that "proof of prejudice is generally a necessary but not [a] sufficient element of a due process claim"); *Barker*, 407 U.S. at 530 (including as the final factor in the balancing test "prejudice to the defendant"); *Calabaza*, 2011-NMCA-053, ¶¶ 22-23 (holding that there was no violation of due process where the defendant suffered no prejudice). In this case, Defendant does not argue that significant prejudice occurred and we identify none from our review of the record.

**{15}** After the return of the jury's verdict, the district court ordered a pre-sentence report, which was completed on June 18, 2014. The district court was not in Portales, New Mexico for two weeks because it presided over a murder trial in Tucumcari, New Mexico sometime in May or June. The district court judge was then on medical leave for six weeks at the end of July. The district court sent notice on October 2, 2014, for the sentencing hearing to take place on October 20, 2014. Defendant obtained a copy of the pre-sentence report on October 16, 2014, and filed a motion to dismiss on October 22, 2014. Throughout the delay, Defendant was out on bond, was employed, and even requested further time at sentencing to get his affairs in order. The district court granted an additional two weeks before remand, sentenced Defendant to the mandatory habitual offender time, and suspended the rest of his sentence.

**{16}** Although Defendant argues that he was prejudiced because he was not provided the pre-sentence report earlier, the district court was in control of the report and both parties were required to obtain a copy from the district court. Defendant did not identify any material issue that arose at his sentencing hearing because of the delay in receiving his pre-sentencing report. As such, Defendant did not meet his burden of proof under either theory, and we conclude that there was no violation of Defendant's right to due process under the Fourteenth Amendment in the delay that occurred prior to his sentencing hearing.[2] *See*

---

[2]Defendant did not assert a statutory claim under Rule 5-701(B) NMRA that states: "A sentencing hearing shall begin within ninety (90) days from the date the trial was

*Betterman*, 136 S. Ct. at 1615 (recognizing that "[i]t would be an unjustified windfall, in most cases, to remedy sentencing delay by vacating validly obtained convictions").

## II.    Ineffective Assistance of Counsel

**{17}**    We review de novo "the legal issues involved with claims of ineffective assistance of counsel" and "defer to the findings of fact of the [district] court if substantial evidence supports the court's findings." *State v. Crocco*, 2014-NMSC-016, ¶ 11, 327 P.3d 1068. "Criminal defendants are entitled to reasonably effective assistance of counsel under the Sixth Amendment of the United States Constitution." *Id.* ¶ 12 (internal quotation marks and citation omitted). For a successful claim of ineffective assistance of counsel, a defendant must show that his attorney erred and that this error prejudiced the defendant. *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517. The "prejudice" element of an ineffective assistance of counsel claim is not satisfied when the defendant only proves that a particular act or omission by his counsel was prejudicial to his defense; instead, the defendant must show a "reasonable probability" that but for the attorney's objectively unreasonable conduct, the result of the proceedings would have been different. *State v. Brazeal*, 1990-NMCA-010, ¶ 23, 109 N.M. 752, 790 P.2d 1033 (internal quotation marks and citation omitted).

**{18}**    "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *Crocco*, 2014-NMSC-016, ¶ 14 (internal quotation marks and citation omitted). However, "[t]he record is frequently insufficient to establish whether an action taken by defense counsel was reasonable or if it caused prejudice." *Arrendondo*, 2012-NMSC-013, ¶ 38. Thus, the appellate courts prefer "that these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions." *Id.* The "appellate court[s] may remand a case for [a full] evidentiary hearing if the defendant makes a prima facie case of ineffective assistance [of counsel]." *Crocco*, 2014-NMSC-016, ¶ 14 (internal quotation marks and citation omitted). A prima facie case of ineffective assistance of counsel is made where: "(1) it appears from the record that counsel acted unreasonably; (2) the appellate court cannot think of a plausible, rational strategy or tactic to explain counsel's conduct; and (3) the actions of counsel are prejudicial." *State v. Herrera*, 2001-NMCA-073, ¶ 36, 131 N.M. 22, 33 P.3d 22 (internal quotation marks and citation omitted).

**{19}**    Defendant argues that because defense counsel failed to assert Defendant's right to a speedy trial and move to dismiss the charges, there exists a prima facie showing of ineffective assistance of counsel. Recently in *State v. Castro*, this Court determined that a prima facie case for ineffective assistance of counsel was established under the facts that included defense counsel's failure to ever assert the defendant's speedy trial rights, pro forma or otherwise. 2016-NMCA-085, ¶¶ 46, 48, 381 P.3d 694. However, this case is easily

---

concluded or the date a plea was entered[,]" unless good cause is shown.

distinguished from *Castro*.

**{20}** In *Castro*, defense counsel never asserted the defendant's right to a speedy trial at any time during the nearly four years that his case was pending. *Id.* ¶ 46. In the present case, although it appears from the record that defense counsel failed to assert Defendant's right to a speedy trial at every available juncture, defense counsel made one pro forma assertion to the magistrate court of Defendant's Sixth Amendment right and several mentions of the lengthy time line of the case to the district court. Furthermore, in *Castro* this Court specifically discussed defense counsel's failure to communicate with his client, focusing his efforts on receiving payment for past work, and his several motions to withdraw. *Id.* ¶ 48. The defendant in *Castro* also presented an affidavit attesting to his desire to assert his speedy trial right. *Id.* The record before us presents no such facts or assertions by Defendant. It is not disputed that defense counsel for Defendant may have asserted Defendant's right to a speedy trial more vigorously and could have requested a speedy trial ruling from the district court during the three years it took to bring this simple aggravated battery case to trial. *See State v. Leon*, 2013-NMCA-011, ¶ 20, 292 P.3d 493 (recognizing a presumption of counsel's ineffectiveness when constitutional rights are implicated and counsel fails to preserve a defendant's right to appeal). However, we note that defense counsel's action did not rise to the level of unreasonableness identified in *Castro*.

**{21}** In addition, we agree with the State that there is plausible and rational strategy for defense counsel's conduct. Here, defense counsel was diligent in moving to have the testimony of the Victim suppressed after he twice failed to attend scheduled interviews. Although Defendant's defense counsel ultimately interviewed Mr. Montano over the phone because he had moved to Arizona, it is possible that defense counsel hoped that Mr. Montano would either continue to elude her or fail to appear altogether for trial, requiring the State to drop the charges. Furthermore, because defense counsel was diligent, on multiple occasions, in asserting Defendant's argument regarding the State's failure to provide access to Mr. Montano, we see no reason to doubt her competency to vigorously represent Defendant at trial. Taking into account defense counsel's level of competency with regard to preparation for trial as well as the other plausible explanation for failing to more vigorously assert Defendant's speedy trial right, based upon the facts known to this Court, we agree that defense counsel was likely making specific, reasoned decisions in her representation of Defendant in this case. *See Castro*, 2016-NMCA-085, ¶ 50 (finding "no rational or strategic basis" for the defense counsel's failure to act regarding the assertion or preservation of the defendant's right to a speedy trial). Where a plausible, rational strategy for defense counsel's conduct exists, as is the case here, Defendant has failed to establish a prima facie case for ineffective assistance of counsel, and we need not reach the issue of whether Defendant was prejudiced. *See Crocco*, 2014-NMSC-016, ¶ 24 (explaining that the defendant did not establish a prima facie claim of ineffective assistance based on defense counsel's failure to move to suppress evidence where the assertion would likely have been groundless as the record did not show any constitutionally-protected privacy interest was violated by the warrantless entry by police).

8

**{22}** We decline to remand this case for an evidentiary hearing on whether defense counsel provided ineffective assistance of counsel. We note that Defendant is entitled to pursue an ineffective assistance of counsel claim further by filing a petition for habeas corpus. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]").

### III.    Testimony of Jesus Acosta

**{23}** We review the district court's decision regarding discovery issues for an abuse of discretion. *State v. Desnoyers*, 2002-NMSC-031, ¶ 25, 132 N.M. 756, 55 P.3d 968, *abrogated on other grounds as recognized by State v. Forbes*, 2005-NMSC-027, ¶ 6, 138 N.M. 264, 119 P.3d 144. "In order to find an abuse of discretion, we must conclude that the decision below was against logic and not justified by reason." *State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027 (internal quotation marks and citation omitted).

**{24}** Defendant argues that the district court erred in allowing Mr. Acosta to testify because the address provided on the State's witness list was insufficient. Rule 5-501(A)(5) NMRA states that the State shall disclose to the defendant a "written list of the names and addresses of all witnesses which the prosecutor intends to call at the trial[.]" The State has a continuing duty under Rule 5-505(A) NMRA to disclose "additional material or witnesses which [the prosecutor] would have been under a duty to produce or disclose [by] . . . promptly giv[ing] written notice to the other party . . . of the existence of the additional material or witnesses." The assessment of sanctions for a violation of discovery "depends upon the extent of the [g]overnment's culpability weighed against the amount of prejudice to the defense." *State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25 (omission, internal quotation marks, and citation omitted). "The exclusion of witnesses is a severe sanction [and] . . . like outright dismissal of a case, the exclusion of witnesses should not be imposed except in extreme cases, and only after an adequate hearing to determine the reasons for the violation and the prejudicial effect on the opposing party." *Id.* ¶ 21.

**{25}** The State did not fail to disclose the witness's identity or act in bad faith to conceal his whereabouts. The State filed an updated witness list on June 24, 2011, including the name of Mr. Acosta and an address at the Midway Dairy. The prosecutor for the State located Mr. Acosta only thirty-six hours prior to trial after searching for him. Defendant was then given the opportunity to interview Mr. Acosta in person prior to his testimony. Given that Mr. Acosta was the only witness to the events between Defendant and Mr. Montano, it would have been an extreme sanction to exclude his testimony where there is no evidence that the State failed to timely disclose his identity, the State searched to locate him for an interview, and Defendant was ultimately able to interview him prior to his testimony. As a result, we hold that the district court did not abuse its discretion by refusing to exclude the testimony of Mr. Acosta. *See State v. Le Mier*, 2017-NMSC-017, ¶ 17, 394 P.3d 959 ("As

9

an appellate court, we necessarily operate with imperfect information about the proceedings we review, and our assessment of the propriety of the decision to impose or not to impose witness exclusion must reflect this reality.").

## IV.    Defendant Was Afforded a Fair Trial

### A.    Courtroom

{26}    Defendant argues that the location of his trial, the Yam Theater, did not afford him a fair trial because the proceedings lacked the necessary decorum. However, Defendant does not argue violations of due process or equal protection and "[a] general claim of denial of a fair trial cannot provide a basis for relief." *State v. Smith*, 1979-NMSC-020, ¶ 9, 92 N.M. 533, 591 P.2d 664. Furthermore, Defendant does not cite to any specific facts in the record pointing to how the location was unconstitutional and "[w]e will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Finally, Defendant does not argue that the location limited public access and thereby, denied him a right to a public trial as afforded by the Sixth Amendment to the United States Constitution.

{27}    Instead, Defendant cites to several cases from other jurisdictions where courts have determined that an alternative trial location denied those defendants a fair trial. *See Roberts v. State*, 158 N.W. 930, 932 (Neb. 1916) (identifying specific facts during a trial held in a theater where the bailiff announced that the "regular show will be to[]morrow; matinee in the afternoon and another performance at 8:30" (internal quotation marks and citation omitted)); *People v. Rose*, 368 N.Y.S.2d 387, 391 (N.Y. Cty. Ct. 1975) (holding that selecting a room permeated with religious symbols was prejudicial to the defendant as it was inconsistent with prohibitions against the establishment of religion); *State v. Jaime*, 233 P.3d 554, 555 (Wash. 2010) (holding that a trial in a jail was inherently prejudicial to the defendant). However, none of these cases are sufficiently similar to Defendant's case. The trial was held at the Yam Theater out of necessity because the ducts at the courthouse were being cleaned. There are no facts argued by Defendant that the case lacked the proper solemnity of a criminal trial. Furthermore, unlike the cases presented by Defendant, the theater did not cause the trial to become a spectacle or "show" and it was not full of religious symbols. The district court further referred to the theater as a courtroom. Finally, Defendant failed to identify to any facts that would lead us to conclude that the location was so uninviting as to limit public access.

{28}    For the foregoing reasons, we will not try to guess at Defendant's legal argument or attempt to search for facts that could support such an argument. Holding Defendant's trial at Yam Theater did not deny Defendant a fair trial. *See People v. Terry*, 222 P.2d 95, 584 (Dist. Ct. Cal. App. 1950) ("In the absence of some showing to the contrary[,] the mere fact of holding a session of court in a room other than a regular court room is entirely insufficient to warrant a conclusion, that the trial was secret and violative of the rights of [the] defendant").

10

**B.     Evidentiary Arguments**

**{29}**     Defendant argues that two evidentiary errors denied him a fair trial: (1) the chain of custody of the knife that was admitted at trial through a photograph, and (2) Mr. Montano's statement to Agent Alvarado that Defendant was the one who stabbed him. Defense counsel cites to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1 in advocating Defendant's position.

**{30}**     "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted).

**1.     Photograph of the Knife**

**{31}**     Defendant, on appeal, challenges the chain of custody of the knife that was admitted at trial through a photographic exhibit. "In order to admit real or demonstrative evidence, the evidence must be identified either visually or by establishing custody of the object from the time of seizure to the time it is offered into evidence." *State v. Rubio*, 2002-NMCA-007, ¶ 16, 131 N.M. 479, 39 P.3d 144 (internal quotation marks and citation omitted). "The State is not required to establish the chain of custody in sufficient detail to exclude all possibility of tampering." *Id.* Photographic evidence, a form of demonstrative evidence, "must fairly and accurately represent the depicted subject in order to satisfy the foundation requirement for authentication of photographs." *State v. Mora*, 1997-NMSC-060, ¶ 53, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683. Photographic evidence is admissible "when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness's personal observation." *State v. Henderson*, 1983-NMCA-094, ¶ 8, 100 N.M. 260, 669 P.2d 736.

**{32}**     Defendant's argument on appeal, challenging the adequacy of the State's proof of the chain of custody of the knife, was minimally developed in his brief in chief. Generally, this Court is under no obligation "to review an argument that is not adequately developed." *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701. Even if we interpret Defendant's argument to be that in failing to establish the chain of custody of the knife, the State did not establish the admission of the photograph of the knife, "[q]uestions concerning a possible gap in the chain of custody affects the weight of the evidence, not its admissibility." *State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896. The only questions therefore are whether the knife was relevant to the case and whether the State laid a proper foundation for admission of the photograph of the knife.

**{33}** At trial, Defendant objected to the State's admission of the photograph of the knife (Exhibit 2), the same knife that was given to Agent Alvarado by Defendant's wife. Defendant does not argue that the knife given to Agent Alvarado by Defendant's wife was not relevant to the stabbing incident between Defendant and the Victim. As to the foundation for the photograph of the knife, Agent Alvarado testified to the following facts: (1) while interviewing Defendant after the incident, Agent Alvarado requested the knife from Defendant;(2) Agent Alvarado was then able to retrieve the knife from Defendant's wife; (3) the photograph offered by the State was a picture of the knife he received from Defendant's wife; and (4) the photograph was "a fair and accurate depiction of the knife" that he received. For the purposes of the photograph, this testimony is sufficient to lay the foundation for the authentication of a photograph. *See State v. Henderson*, 1983-NMCA-094, ¶ 8, 100 N.M. 260, 669 P.2d 736 (recognizing that photographic evidence is admissible under the pictorial theory where the sponsoring witness testifies "that it is a fair and accurate representation of the subject matter, based on that witness's personal observation"). Under the circumstances in this case, the district court did not abuse its discretion in admitting the photograph of the knife. *See id.*

### 2.      Testimony of Agent Alvarado

**{34}** Agent Alvarado testified that Mr. Montano told him that Defendant stabbed him. Defense counsel did not object. "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted). This Court reviews unpreserved evidentiary matters for plain error. *State v. Contreras*, 1995-NMSC-056, ¶ 23, 120 N.M. 486, 903 P.2d 228. "The plain-error rule, however, applies only if the alleged error affected the substantial rights of the accused. We must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citations omitted); *see* Rule 11-103(E) NMRA (permitting a court to "take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved").

**{35}** Defendant argues that Agent Alvarado's testimony that Mr. Montano told him that it was Defendant who stabbed him violated his confrontation rights under the Confrontation Clause. However, the testimony did not affect Defendant's substantial rights in the present case. The fact that Defendant was the individual who stabbed Mr. Montano was not in dispute. Mr. Montano testified to the fact that Defendant stabbed him and was subject to cross-examination by Defendant. Defendant also testified that, during the fight, he was swinging the knife at Mr. Montano and hit him. As such, Agent Alvarado's testimony was simply cumulative evidence that corroborated the testimony of both Defendant and the Victim. As such, Agent Alvarado's testimony does not implicate a violation of the confrontation clause and any error that may have occurred would be harmless. *See State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936 (reviewing improperly admitted evidence for non-constitutional harmless error). By its nature, harmless error would not be sufficiently

prejudicial to establish grave doubts in the minds of the jury and therefore would not rise to a level sufficient to establish plain error. *See State v. Lopez*, 2009-NMCA-044, ¶ 15, 146 N.M. 98, 206 P.3d 1003 (recognizing that, to support reversal, the prejudicial nature of the evidence must have "likely contributed to the jury's verdict or, instead, was not prejudicial because it constituted harmless error").

## V.      Cumulative Error

**{36}**     "Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937. "The doctrine cannot be invoked if no irregularities occurred or if the record as a whole demonstrates that a defendant received a fair trial[.]" *Id.* (citations omitted). Having now determined that the only evidentiary error occurring in this case was one minor instance of harmless error, we also hold that there was no cumulative error. *See State v. Duffy*, 1998-NMSC-014, ¶ 60, 126 N.M. 132, 967 P.2d 807 (reasoning that no cumulative error exists where, after addressing each error claimed by the defendant, our Supreme Court determined that there was either no error or only harmless error), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

## CONCLUSION

**{37}**     For the foregoing reasons, we affirm Defendant's conviction.

**{38}      IT IS SO ORDERED.**

_____
                              **TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JULIE J. VARGAS, Judge**

13